Argued March 18, peremptory writ ordered March 30, 1954

# LAFFERTY *v.* NEWBRY
268 P. 2d 589

*A. W. Lafferty,* in propria persona, of Portland, argued the cause and filed a brief for petitioner.

*E. G. Foxley,* Deputy Attorney General, of Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, of Salem.

LATOURETTE, C.J.

Petitioner A. W. Lafferty, candidate for Congress from the Third Congressional District, Multnomah county, submitted to the respondent Secretary of State material for insertion in the voters' pamphlet accompanied by the necessary fees. That official refused to accept the proffered material, whereupon petitioner filed mandamus in this court to compel him to do so.

The material submitted by petitioner was a map of western Oregon wherein was included in black squares the Oregon and California railroad revested lands, accompanied by the wording: "To Save O & C Vote for Me! A. W. Lafferty. Each Black Square is 640 Acres. 2.5 Million Acres—O & C—Worth Billions." This material was offered to be inserted on one page of the pamphlet. For the second page there was sub-

mitted a picture of a statue of Sacajawea, with child on back, pointing to the map, with the accompanying wording: "Yonder is Oregon—Sacajawea A Fit Mother For Her Own Child. Electors: To Save O & C Vote for Me! truly yours, A. W. Lafferty, Fenton Building, Portland 4, Oregon." It will be remembered that Sacajawea was the Indian woman who accompanied the Lewis and Clark Expedition as a guide and interpreter across the plains and over the mountains into Oregon in 1804-1806.

ORS 255.030 (1) provides:

"Any candidate * * * may file with the secretary of state for publication * * * with his portrait cut, if he wishes, printed or typewritten statements, * * * over his or their signatures, stating the reasons why he should be nominated."

ORS 255.040 provides as follows:

"(1) The Secretary of State shall reject any statement or other matter favoring or opposing any candidate and offered for filing and printing in the voters' pamphlet, which, in his opinion contains any obscene, vulgar, profane, scandalous, libelous or defamatory matter, or any language which in any way incites, counsels, promotes or advocates hatred, abuse, violence or hostility toward, or which tends to cast ridicule or shame upon any person or group of persons by reason of race, color, religion or manner of worship, or any language or matter the circulation of which through the mails is prohibited by Congress. Such statements shall not be filed or printed in the voters' pamphlet. Nor shall any candidate be entitled to display in the pamphlet any cut showing the uniform or insignia of any organization which advocates or teaches racial or religious intolerance."

The law further provides that after such rejection the person submitting such statement may appeal to

a board of review, consisting of the governor, attorney general and superintendent of public instruction, the decision of which shall be final.

The decision of this case rests largely on the meaning of the word "statement." Throughout the act the words "statement" and "argument" are used interchangeably. We adopt the definition of "statement" as submitted by the attorney general, representing the respondent, taken from Webster's New International Dictionary, 2d ed, Unabridged, as follows:

"Act of stating, reciting, or presenting, orally or on paper; as, the *statement* of a case."

■ This definition is broad and includes the act of presenting matter on paper, whether in words, pictures, or drawings for the purpose of carrying home to the voters the message of the candidate. It is not limited to words alone as is contended for by the attorney general. It is well known that often, even in this court, attorneys, in making their opening statements and arguments, indulge in the use of illustrations as a part of the same. One need go no further than the opinions of this court to find maps, pictures and drawings included in the statement of the case.

■ In the past the secretary of state has interpreted the law as authorizing one seeking office to insert in the voters' pamphlet maps and pictures. It is axiomatic that the construction a department places on a law over a period of time, although not conclusive, is persuasive on the courts. For instance, as far back' as 1913, there was contained in the voters' pamphlet, with reference to a bill to provide funds for repairs to certain buildings at the University of Oregon, pictures of various buildings on the campus of the university, some of which were not included within the bill itself.

In the voters' pamphlet of 1914, there were included pictures of buildings and grounds of the Southern Oregon State Normal School and Eastern Oregon State Normal School in an attempt to persuade the voters to levy taxes for the construction, support and maintenance of such institutions. In the voters' pamphlet of 1917 there was inserted a map of the state of Oregon pointing out the several roads and highways designated in a bill to raise money under a bonding act for the construction of such roads. In 1952, petitioner, who was then running for Congress, submitted the identical map of western Oregon, now in controversy, to the Secretary of State for publication in the voters' pamphlet, which was then accepted by said officer.

It might be argued that there is justification for the use of pictures and maps in the voters' pamphlet where measures are to be voted on rather than candidates since the initiative statute refers to "arguments" rather than "statements." However, as hereinbefore pointed out, the pamphlet law concerning candidates employs the words "statements" and "arguments" interchangeably, so that in reality there is no distinction between the two acts in the respects mentioned.

It is argued by the attorney general that the statute concerning "statements" is not free from doubt and depends upon construction and therefore the respondent has a discretion to determine the appropriateness of the submitted matter which cannot be controlled by mandamus. This suggested rule has no application to the case at bar.

ORS 255.030 is free from doubt and no discretion, expressed or implied, reposes in respondent. The only authority granted to the Secretary of State, so far as rejecting matter for the voters' pamphlet submitted by a candidate is concerned, is measured by the lan-

guage, "obscene, vulgar, profane," etc., set out in ORS 255.040 (1) aforesaid. Expressio unius est exclusio alterius.

By embracing respondent's theory the Secretary of State would be in a position to exercise a tremendous political power, not contemplated or envisaged by the legislature, as the only right of appeal under the statute is granted where the secretary of state rejects the submitted statement on the ground of obscenity, etc.

It is thus seen that to grant him the power claimed would leave a candidate without a remedy where rejection is based on grounds other than those mentioned in ORS 255.040 (1). He would have no right of appeal, nor would mandamus be available to him. If that public official were so minded and had discretion in the matter, he could put a stumbling block in the way of a candidate to satisfy his own personal purposes and perhaps that of his party, which would subvert the free flow of political discussion so zealously cherished and guarded by the American electorate.

■ This act should be liberally construed. What to a candidate might seem pertinent and germane might not seem so to the Secretary of State. The voters' pamphlet is the poor man's avenue to reach all the registered voters. A candidate who pays the requisite fees and does not offend the provisions of ORS 255.040 (1) should not be placed at the mercy or whims of a public official.

■ ORS 255.060 (3) designates the size of the pages of the pamphlets and of the type to be used. We do not intimate that, where the size of the printed matter submitted does not correspond with the size designated by the statute, the latter shall not control. This is merely a matter of mechanics and the Secretary of State must necessarily follow the statute.

■ We hold that the statement submitted by the petitioner should be published in the voters' pamphlet, and a peremptory writ will issue directing respondent to act in conformity with this opinion.

ROSSMAN, J., specially concurring.

The photograph which Mr. Lafferty wishes to have included in his space in the Voters' Pamphlet is one of the statue of Sacajawea which stands in City Park, Portland. The statue as a work of art has won wide recognition. Obviously, there is nothing offensive about the picture. The candidate deems the picture material to the argument which he wishes to make to the voters. A proverb says that "One picture is worth a thousand words."

The sole objection to the publication of the picture that has been suggested is that the picture is not relevant to the arguments which the candidate offers in support of his candidacy. One of the dissenting opinions holds that the Secretary of State has discretion in determining the relevancy of material which is offered to him by candidates for publication in the Voters' Pamphlet and that he properly ruled that the photograph of the Sacajawea statue is irrelevant. That opinion says: "I am also of the opinion that the matter involved is not substantial or of sufficient importance * * *. The argument supporting petitioner's case was irrelevant and frivolous. * * * It is no more difficult for this court to determine 'relevance' in this case than in any other legal controversy." No argument is needed to make one realize that if the Secretary of State can reject a map, photograph or drawing from the Voters' Pamphlet, under a belief that it is "irrelevant", he can do the same with the written statement which the candidate offers. The question thereupon

presents itself as to whether or not the legislature has entrusted the Secretary of State with power to review the arguments which candidates present for inclusion in the Voters' Pamphlet and to reject those which he deems irrelevant. In short, did the legislature, when it made provision for the Voters' Pamphlet, intend that the Secretary of State should have the power of censorship. In determining that issue, we must bear in mind that the Secretary of State holds a partisan, elective office. With no reference whatever to the present gentleman who is the incumbent of that high office, let us bear in mind that men who hold that office sometimes are politically ambitious. They are, and should be, partisans. Candidates of various political beliefs and the political parties themselves are entitled to space in the Voters' Pamphlet. Did the legislature intend that a partisan holding an elective political office should have the power of passing upon statements filed by candidates as well as by parties and of determining whether the statements or some picture that accompanied them are relevant to the arguments?

Up to this time no one has ever claimed that the Secretary of State can censor any material that is submitted to him for inclusion in the Voters' Pamphlet.

In determining whether or not the Secretary has power to censor material and reject that which he believes is irrelevant, we must give attention to the section of our laws which I will presently quote. The legislature, in making provision that obscene, vulgar, profane, scandalous, etc. matter should be excluded from the Voters' Pamphlet, did not entrust the exclusionary power to the Secretary of State alone. It made provision for a board of three to be the official arbiters. The board does not include the Secretary of State. Its membership contains the Superintendent of

Public Instruction, holder of one of the state's highest nonpartisan offices. Its membership also embraces the Governor and the Attorney General. When account is taken of the fact that the legislature included those three high officials in the board, one can reasonably infer that the legislature deemed that the power to exclude from the Voters' Pamphlet a statement presented by a candidate or a political party is a very great one. The following is the pertinent provision:

"The Secretary of State shall reject any statement or other matter favoring or opposing any candidate and offered for filing and printing in the voters' pamphlet, which, in his opinion contains any obscene, vulgar, profane, scandalous, libelous or defamatory matter, or any language which in any way incites, counsels, promotes or advocates hatred, abuse, violence or hostility toward, or which tends to cast ridicule or shame upon any person or group of persons by reason of race, color, religion or manner of worship, or any language or matter the circulation of which through the mails is prohibited by Congress. Such statement shall not be filed or printed in the voters' pamphlet. Nor shall any candidate be entitled to display in the pamphlet any cut showing the uniform or insignia of any organization which advocates or teaches racial or religious intolerance.

"Within five days after such rejection the persons submitting such statement for filing may appeal to a board of review, consisting of the Governor, Attorney General and Superintendent of Public Instruction. The decision of such board shall be final upon the acceptance or rejection of the statement or matter thus in controversy. * * *"

Manifestly, the power to exclude from the Voters' Pamphlet a statement upon a finding of irrelevancy is a greater one than to exclude something else under

a belief that it is vulgar, scandalous or libelous. Vulgar and profane matter, in all likelihood, will not advance a candidate's cause with the people, but material which a censoring official may deem irrelevant may, in effect, be a winning argument with the voters. Although it is claimed that the Secretary of State has the power to exclude material when he believes that it is irrelevant to the candidate's cause, there is not one word in the statute that so states or which defines relevancy. It is rare that an administrative official has a power which is not mentioned in the statute and which is nowhere defined. If the argument which has been advanced in behalf of the Secretary of State is warranted, then that official's power to exclude material from the Voters' Pamphlet which he deems irrelevant has been entrusted to the Secretary alone, whereas his exclusion of vulgar and defamatory matter is subject to review by a board composed of three of the state's highest officials. The disparity in treatment argues against the purported power.

Clearly, the value of the Voters' Pamphlet would be enhanced if everything included within its covers were relevant, but I cannot convince myself that the power to determine relevancy reposes in the Secretary of State. It is even more important that everything included in the Voters' Pamphlet should be truthful, but certainly no one will claim that the Secretary of State has the power of passing upon the truthfulness and correctness of material that is submitted.

The statement, "It is no more difficult for this court to determine 'relevance' in this case than in any other legal controversy" is more plausible than sound. If this court takes upon itself the power to pass upon the relevancy of appeals made by candidates to the voters for their ballots, it will find itself enmeshed in

many difficult and embarrassing issues. Wisdom cautions that the court avoid issues of that kind. It is not equipped to render that kind of service to the electorate. The truth of the matter is that if we hold that the Secretary of State has the power to reject arguments which he believes are irrelevant and if, under a belief that a given statement presented for publication is irrelevant, he rejects it, it will be virtually impossible to secure judicial review of the Secretary's ruling. The only remedy that might possibly be available is mandamus. Yet mandamus can never be employed to control the exercise of judgment by a court, public official or administrative body.

Obviously, material included in the Voters' Pamphlet should be relevant if the candidates hope to win. But it is the voter alone who passes upon relevancy. The candidate's appeal is addressed to him. If the voter finds that a given candidate presents, in behalf of his candidacy, arguments that are irrelevant, they will be rejected and the candidate will be defeated. Upon that score the voter has the sole power of ruling. Without doubt, every issue of the Voters' Pamphlet through the years has contained scores of irrelevant arguments. It is far better that the voters—rather than some censoring official—rejected them.

I concur in the opinion of the Chief Justice. In so doing, I wish to make it clear that ORS 255.060 specifies the size and kind of type which must be used in the printing of the Voters' Pamphlet. In printing Mr. Lafferty's material, the Secretary of State will, of course, conform to that section of our laws.

TOOZE and PERRY, JJ., concur in this opinion.

BRAND, J., dissenting.

I dissent. Since the construction of the statute has an important bearing upon the exercise of the demo-

cratic process by which candidates submit themselves to the decision of the electorate, and by which the voters are to be fairly and intelligently advised concerning the claims of those who seek office, I deem it necessary to set forth the reasons which militate against the majority opinion.

The law concerning the filing of statements by candidates at primary elections now appears as ORS 255.030 and ORS 255.040, et seq. The two sections above-specified were enacted by Oregon Laws 1945, chapter 50, as a single section, which, for convenience, has been divided by the revisers of ORS. As enacted and as now written, the controlling and relevant provisions are as follows:

"Any candidate * * * may file * * * for publication * * * with his portrait cut, if he wishes, printed or typewritten statements, on the conditions set forth in ORS 255.030 to 255.070, over his or their signatures, *stating the reasons why he should be nominated.*" ORS 255.030. (Italics mine.)

"The Secretary of State shall reject any statement or other matter favoring or opposing any candidate * * * which, in his opinion contains any obscene, vulgar, profane, scandalous, libelous or defamatory matter, or any language which in any way incites, counsels, promotes or advocates hatred, abuse, violence or hostility toward, or which tends to cast ridicule or shame upon any person or group of persons by reason of race, color, religion or manner of worship, or any language or matter the circulation of which through the mails is prohibited by Congress. Such statements shall not be filed or printed in the voters' pamphlet. Nor shall any candidate be entitled to display in the pamphlet any cut showing the uniform or insignia of any organization which advocates or teaches racial or religious intolerance." ORS 255.040.

The words "portrait cut" as used, mean engravings of a "conventional photograph of a candidate's face, or face and bust, not over five years old." ORS 255.020. The provisions for the rejection by the Secretary of State of "any statement or other matter" because it is libelous, etc., is in the nature of a proviso. The right given the candidate is defined in the first portion of the section as enacted, which is now ORS 255.030, and the proviso is for the obvious purpose of limiting the right therein given.

In *Mackenzie v. Douglas County,* 81 Or 442, 449, 159 P 625, 159 P 1033, this court, after citing Black, Interpretation of Laws, § 107, said:

> "A proviso is commonly found at the end of the act or section to which it applies, and it is usually introduced by the word 'provided.' This, however, is not necessary to determine its character. It is the matter of the succeeding words, and not the form, that determines its legal character: Id., p. 270. Section 110 of the same work reads thus:
>
> " 'The natural and appropriate office of a proviso to a statute, or to a section thereof, is to restrain or qualify the provisions immediately preceding it. Hence it is a rule of construction that it will be confined to that which directly precedes it, or to the section to which it is appended, unless it clearly appears that the legislature intended it to have a wider scope.'
>
> " 'The general intent will be controlled by the particular intent subsequently expressed': 2 Lewis' Sutherland, Stat. Const., § 351."

In *State v. Young,* 74 Or 399, 406, 145 P 647, this court said:

> " * * * The office of a proviso is to limit or restrain preceding enactments, and cannot be held to enlarge the scope of such preceding enactment: * * * "

Again we quote:

"When we speak of the purview of a statute we mean the enacting part or body of the act as distinguished from other parts of it such as the preamble, the title, saving clauses and provisos: * * *." *Olson v. Heisen*, 90 Or 176, 178, 175 P 859.

In the same case, at page 178, this court, by Justice HARRIS, said:

"The appropriate function of a proviso is to restrain or modify the purview of the statute in which the proviso is found: * * *."

See also *Meyers v. Pacific States Lumber Co.*, 122 Or 315, 259 P 203; *Holman Transfer Co. v. City of Portland*, 196 Or 551, 249 P2d 175, 250 P2d 929.

In the light of these decisions, it is apparent that the provisions for the rejection of the objectionable matter described in the statute, operate only to exclude portions of statements which would otherwise be within the purview of the provision granting the right to publish statements in the Voters' Pamphlet. Applying these rules, it appears that ORS 255.030 is the only portion of the statute which affirmatively gives to any candidate any right to publish anything in the Voters' Pamphlet. If the matter tendered for publication is a portrait cut, i.e., "his", the candidate's, portrait, or his statement "stating the reasons why he should be nominated", it becomes the duty of the Secretary of State to publish it, unless the statement "or other matter" filed comes within the exclusionary provisions of ORS 255.040. If the matter tendered does not come within the right granted in ORS 255.030, then there is no right to publish and the exclusionary provisions become immaterial. Beyond "peradventure of doubt",

the purpose of the provisions now found in ORS 255.040 is to exclude from the purview of the statute matters which would otherwise fall within it, and those exclusionary provisions are in the nature of provisos.

It has been suggested that the maxim "expressio unius est exclusio alterius" may be applied here with the result that any matter not within the express prohibition as libelous, obscene and the like, should be deemed to come within the provisions of the statute which grants the right to publish "statements" and this, regardless of the relevance of such matter to the candidacy of the person filing the statement. This argument is, in my opinion, unsound. The maxim in question is to be applied with caution, and merely as an auxiliary rule to determine the legislative intention. *Scott v. Ford,* 52 Or 288, 97 P 99; *State of Oregon v. Standard Oil Co.,* 61 Or 438, 123 P 40; *O'Neill v. Odd Fellows Home,* 89 Or 382, 174 P 148; *Cabell v. City of Cottage Grove,* 170 Or 256, 130 P 1013. In none of these cases was the court dealing with the words in a proviso nor do they contain any support for the argument that the maxim should be applied as has been suggested. The essential fact is that we are dealing with exclusionary provisions limiting a right otherwise granted. If a statement and portrait cut were offered by the candidate "stating why he should be nominated" and coming clearly within the grant of right contained in ORS 255.030, and if then, an attempt were made to add a new classification to the statutory list which authorizes the Secretary of State to reject a tendered statement, then I would agree that the rule expressed by the Latin maxim would be applicable. Since the proviso had listed the objectionable statements requiring rejection by the Secretary, no others would be implied. Such

was the ruling of this court in *Kruckman v. Smith,* 126 Or 395, 398, 270 P 474, where the court said:

"* * * The inclusion of the exceptions in case of death, resignation, etc., in the statute to the rule that the trial judge must approve and authenticate the bill of exceptions would, under the well-known cannon of construction, exclude any other exception or condition not enumerated therein. *Expressio unius est exclusio alterius* is a familiar maxim:"

This, however, is not the situation in the case at bar.

After careful search, I have yet to find an Oregon case in which a proviso, enacted for the purpose of limiting a right granted by the same act, has been held to have enlarged the purview of the right which it purports to limit.

It has been suggested that the words "statement" and "argument" are used interchangeably. I disagree. If the petitioner is to prevail at all, he must bring himself within the purview of ORS 255.030 which alone affirmatively gives him any right to publish. The word "argument" is not to be found in that section nor in any other portion of the only law which governs primary election pamphlets, with the sole exception of one subparagraph. ORS 255.050 relates to the duties of the Secretary of State and state printer. Paragraph 3 of that section provides for printing, binding and distributing the pamphlets. By way of example only, and not as a grant of right, that section says: "For example, the statements and arguments of all candidates seeking republican votes * * * shall be bound * * *", etc., "but no * * * statement or argument * * * shall be included * * *", etc.

An entirely different provision is made in the case of the general election pamphlet in which party candidates compete against candidates from other parties. There, the granting clause expressly empowers political parties to file "statements and arguments" for the success of its principles and election of its candidates. Again, the law concerning initiative and referendum pamphlets affirmatively authorizes "any argument advocating such measure" or "opposing the same."

The context within which the word "statement" is used in ORS 255.030 eliminates all doubt as to its meaning, regardless of its signification when used otherwise. The "statement" must be one "stating the reasons why he should be nominated." Even if it should be assumed that such a statement might contain argumentative matter, it must still be directed to the issue "why he should be nominated", and the question on the facts of the particular case will be whether the matter tendered is such a "statement" whether argumentative or not.

Attention has been called to the fact that on several occasions pictures and maps have been published in the initiative and referendum pamphlets as a part of authorized "arguments" for measures, and we are reminded that administrative construction "over a period of time "is considered persuasive, though not controlling. There have been a number of instances of this kind involving maps, but only when they were relevant to a proposed measure submitted to the voters. On the other hand, careful search discloses only one instance in which either a map or a picture (other than a portrait cut of the candidate) has been found in the statement of any candidate from 1902 to date. That one instance occurred in 1952 when the same person who is now before this court published a map of

Western Oregon in the Voters' Pamphlet along with his statement. Over many years no right such as has been twice claimed by the petitioner has been exercised or recognized, and a single exception is surely insufficient to establish administrative practice "over a period of time."

Our next question relates to the attempted employment of the writ of mandamus in this case. Mandamus is an extraordinary remedial process which is awarded, not as a matter of right, but in the exercise of a sound judicial discretion, and upon equitable principles. *Buell v. Jefferson County Court,* 175 Or 402, 152 P2d 578, 154 P2d 188; *State ex rel. Willamette National Lumber Co. v. Circuit Court for Multnomah County,* 187 Or 591, 211 P2d 994. A relator is not entitled to mandamus unless he has a clear legal right to the performance of a particular duty sought to be enforced and unless the defendant has a clear legal duty to do the thing he is called upon to do. *State ex rel. Scott v. Dobson,* 171 Or 492, 135 P2d 794, 137 P2d 825; *State v. Malheur County Court,* 46 Or 519, 81 P 368. To justify mandamus, the matter involved must be substantial and of sufficient importance, and the writ will issue only to prevent injustice or great injury. *State ex rel. v. Hare,* 78 Or 540, 153 P 790.

It remains only to apply the law to the facts. The petitioner has tendered $200 as payment for two pages of the Voters' Pamphlet. The first page, as described in the majority opinion, contains a map, apparently representing Western Oregon and containing many hundred black and white squares. The only printed matter on this page is in type of different sizes, the letters varying from small to some measuring five-eighths of an inch in height. The second page consists of a print, nearly four inches in height, which,

by a stretch of imagination, might be called a "portrait cut" of a statue which represents Sacajawea with a baby on her back and her right arm outstretched. On this page, types of varying size are employed. The cut of Sacajawea bears no possible resemblance to a conventional photograph of the candidate's face, or face and bust, nor is there any evidence that the photograph or bust is not over five years old. ORS 255.020. The matter thus tendered fails to qualify under the only statutory provision which authorizes any portrait cut. The only other provision of law authorizing the printing of any material at the instance of a candidate for nomination is the one permitting printed or typewritten statements "stating the reasons why he [the candidate (not Sacajawea)] should be nominated." The statements thus authorized are to be printed on the conditions set forth in ORS 255.030 to 255.070. ORS 255.040 contains the provisions for rejection of objectionable matter already mentioned. ORS 255.050 refers to "all such statements and portrait cuts" and describes the duties of the Secretary of State and state printer who is to print *"this material* in pamphlet form, printing the pictures of candidates with and as a part of their statements, where such portrait cuts are offered." (Italics mine.) ORS 255.060 provides that the printed matter in the pamphlets shall be set in eight point Roman face type, single leaded, a requirement with which the tendered material fails to comply. These are the only provisions relative to the issue.

In my opinion, no clear legal right to the performance of the particular duty sought to be enforced has been shown and no clear legal duty on the part of the Secretary of State to file a portrait cut of a statue of Sacajawea under the authority to file statements "stating the reason why he [the petitioner] should be nomi-

nated" has been shown. I am also of the opinion that the matter involved is not substantial or of sufficient importance and that the issuance of the writ is not necessary to prevent injustice or great injury. The argument supporting petitioner's case was irrelevant and frivolous. The same conclusions should, I believe, be reached as to the printing of the map of Western Oregon, at least under the circumstances here shown. It seems too obvious for argument that neither the picture nor the map state the reasons why the petitioner should be nominated.

It is said that a right of appeal to an administrative body is given to any candidate whose statement has been rejected under the provisions of ORS 255.040 and no appeal is provided for the protection of one who files a statement which is excluded because not within the general purview of ORS 255.030. The decision of the majority in this case sufficiently establishes that such a person can have a judicial and more speedy remedy by mandamus if the court finds that the matter tendered should have been accepted. I agree that any refusal of the Secretary of State to publish a proper statement would authorize this court to take jurisdiction in mandamus and compel performance, if a clear duty were shown, which in this case appears to me to be conspicuously lacking.

In my opinion, the Secretary of State has no discretion to refuse any statement in writing which complies with the provisions of ORS 255.030 except as granted in ORS 255.040. Whether or not a statement presented for publication in the Voters' Pamphlet comes within the purview of ORS 255.030 is a question of law for judicial determination. There is no danger that any Secretary of State will be permitted to "sub-

vert the free flow of political discussion'' so long as this court sits.

I cannot believe that the majority of the court would hold that the statute gives to the candidate the right to include in the Voters' Pamphlet a cut of the Tower of Babel or of the Taj Mahal, or of a movie actress. They would surely draw the line somewhere by requiring that the matter printed have relevance to the issue. To me it seems that the line should be drawn where the legislature drew it. It is no more difficult for this court to determine "relevance" in this case than in any other legal controversy. I see no more reason for holding that a statue of Sacajawea should be held to be a "statement" of the reasons why a candidate should be elected or a portrait cut of the candidate than there is for a similar ruling as to the picture of Pocahontas or of Marilyn Monroe. I am constrained to predict that this decision will lead to innovations and frivolities in the Voters' Pamphlet which will add nothing to the information of the voter or the dignity or fairness of the electoral process.

I hope it has been made clear in this dissent that I do not recognize any power of censorship in the Secretary of State authorizing him "to reject arguments which he believes irrelevant." If he should attempt to do so, the remedy is in this court. If the candidate submits his portrait cut and a statement, stating the reasons why he should be elected, no one would have any power to exclude the statement from the Voters' Pamphlet.

WARNER, A.C.J., and LUSK, J., join in this dissent.

LUSK, J. (dissenting).

I concur in the dissent of Mr. Justice BRAND. As his opinion demonstrates, the frequently abused

maxim, "The mention of one thing implies the exclusion of another", has been misapplied by the majority, with the result to be expected—a complete distortion of the meaning of a very simple statute. There is a portion of the statute, however, to which the maxim may with all propriety be applied. That is the language of ORS 255.030, which states what a candidate may file for publication in the Voters' Pamphlet. When the legislature said that the candidate may file his portrait cut and printed or typewritten statement stating the reason why he should be nominated, it by implication excluded everything else. When it authorized the publication of the candidate's "portrait cut" it impliedly excluded every other cut, whether it be of a statue of Sacajawea or a map of western Oregon. This consideration alone should be determinative of the case.

The legislature was under no obligation, constitutional or otherwise, to provide for a Voters' Pamphlet. When it did so it had the power to determine the type of material that should be entitled to publication in the pamphlet. It had the right to charge the secretary of state with the duty of administration of the act, and it should go without saying that it is the secretary of state who must determine whether material offered to him for publication comes within the terms of the act. It would appear, however, that the majority entertains a different and novel notion about these matters, as witness the following excerpts from the opinion:

> "* * * The only authority granted by the Secretary of State, so far as rejecting matters for the voters' pamphlet submitted by a candidate is concerned, is measured by the language, 'obscene, vulgar, profane,' etc., set out in ORS 255.040 (1) aforesaid."

"This act should be liberally construed. What to a candidate might seem pertinent and germane might not seem so to the Secretary of State. The voters' pamphlet is the poor man's avenue to reach all the registered voters. A candidate who pays the requisite fees and does not offend the provisions of ORS 255.040 (1) should not be placed at the mercy or whims of a public official."

The rule of liberal construction was never intended to extend the grant of the legislative body, *In re Frazier's Estate,* 180 Or 232, 238, 177 P2d 254, 170 ALR 729; and that rule does not imply that the legislative mandate may be disregarded or that the words of the statute may be ignored or frittered away. 40 Am Jur 403, Statutes § 387. And no rule of construction can justify the majority's conclusion respecting the authority granted to the secretary of state by this statute. After stating expressly that that official has no authority to reject anything except material which must be excluded under ORS 255.040, it is said, "What to a candidate might seem pertinent and germane might not seem so to the Secretary of State." If this means anything, it means that the secretary of state must accept whatever the candidate submits to him for inclusion in the Pamphlet, and that, with the exception of material that is "obscene, vulgar, profane", etc. the candidate is the final judge of its fitness. Yet it is the secretary of state who is charged with the responsibility of administering the act. The legislature has imposed on him the duty of accepting for publication and publishing the portrait cuts of candidates and their statements giving the reasons why they should be nominated. The secretary of state cannot perform this duty without determining whether or not material submitted to him comes within the statutory

definition, and that involves the exercise of judgment. Of course, as the dissenting opinion of Mr. Justice BRAND shows, if the official should act arbitrarily or even erroneously, an injured candidate would have his remedy in the courts. But under the majority's opinion the people of the state of Oregon would have no remedy, short of repeal or amendment of the statute, as against the abuse of the privilege of the Voters' Pamphlet by candidates for office. Any statement, however foreign to the purpose or outlandish, any picture whether it be of Sacajawea or Mickey Mouse, would have to be accepted because it might seem "pertinent and germane" to the candidate, although not to the secretary of state. The majority seem to have forgotten that the Voters' Pamphlet is an official publication of the state of Oregon provided by law as an aid to the voters in the proper use of those new instruments of government, the direct primary and the initiative and referendum. It may or may not have been intended as "the poor man's avenue to reach all the registered voters"—it is the rich man's avenue as well—, but it is certainly not the private property of any candidate for office, rich or poor. And it is equally certain that the privilege which the state extends to candidates to advertise their candidacy through the pages of the Voters' Pamphlet is limited by law, and that no one is entitled to that privilege except to the extent and within the limitations expressed in the statute. This, at least, was so until the decision today rendered introduced anarchy into the statute.

I am authorized to say that WARNER, A.C.J., and BRAND, J., concur in the foregoing opinion.