Argued and submitted August 27, writ dismissed September 5, 1984

## STATE ex rel FIDANQUE et al,
*Plaintiff-Relators,*

*v.*

## PAULUS,
*Defendant,*
## KOUNS,
*Intervenor.*

(SC S31002)

688 P2d 1303

Richard M. Botteri and Leland R. Berger, Portland, argued the cause and filed a Memorandum and Application and Petition for Writ of Mandamus for Plaintiff-Relators. With them on the Memorandum and Application and Petition was Emily Simon, Portland.

Virginia Linder, Assistant Attorney General Salem, argued the cause and filed Motion to Dismiss Alternative Writ of Mandamus and Memorandum for defendant. With her on the the Motion and Memorandum were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, John A. Reuling, Jr., Special Counsel, and Robert M. Atkinson, Assistant Attorney General, Salem.

John C. Bradley, Portland, argued the cause and filed briefs on behalf of Intervenor Robert Kouns.

CAMPBELL, J.

Lent, J., concurred and filed an opinion.

Linde, J., dissented and filed an opinion in which Roberts, J., joined.

## CAMPBELL, J.

This is a mandamus proceeding over which this court took original jurisdiction pursuant to Article VII, (Amended), section 2, of the Oregon Constitution, and ORS 34.120. It relates to Ballot Measure Number 8 titled "Revises Numerous Criminal Laws Concerning Police Powers, Trials, Evidence, Sentencing."

Plaintiff-Relators allege that the Secretary of State breached her constitutional duty by certifying a prospective petition and allocating to it a ballot number in violation of the single issue requirement of Article IV, section 1(2)(d) of the Oregon Constitution. This case raises three issues: timeliness, jurisidiction and the interpretation of Article IV, section 1(2)(d) and section 1(4)(b). We do not reach the last two issues because we find that the action was not timely.

On September 28, 1983, a prospective petition that eventually became Ballot Measure Number 8 was filed with the Secretary of State's office. That office sent copies of the signature pages to Multnomah, Clackamas and Washington Counties for verification.[1] The counties verified the signatures and returned them to the Secretary of State and on October 6, 1983, she sent two copies of the prospective petition to the Attorney General's office for preparation of a ballot title. On October 20, 1983, the Attorney General certified and returned to the Secretary of State a ballot title. ORS 250.065(3).

On October 21, 1983, the Secretary of State issued a press release describing the proposed initiative. The ballot title was appealed to this court on November 9, 1983, and on January 24, 1984, this court certified a modified ballot title. *Wells v. Paulus,* 296 Or 338, 675 P2d 482 (1984). On July 20, 1984, the Secretary of State, after verifying that sufficient signatures had been collected, assigned Ballot Measure Number 8 to the initiative petition. On August 8, 1984, plaintiff-relators filed an application and petition for writ of mandamus in this court.

Plaintiff-Relators allege that the 1968 amendment of Article IV of the Oregon Constitution both imposed a new

---

[1] The signatures that the Secretary of State verified at this stage of the submission process were the 25 elector signatures required by ORS 250.045(1).

limitation on the exercise of the initiative power and created a new duty for the Secretary of State, neither concept heretofore having been part of Oregon's initiative process. Plaintiff-Relators rely specifically on the following two sections of Article IV of the Oregon Constitution:[2]

Section 1(2)(d) provides:

"An initiative petition shall include the full text of the proposed law or amendment to the Constitution. A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith."

Section 1(4)(b) provides:

"Initiative and referendum measures shall be submitted to the people as provided in this section and by the law not inconsistent therewith."

Plaintiff-Relators contend that the addition of section 1(2)(d) and section 1 (4)(b) requires the Secretary of State to make an independent determination whether the prospective petition complies with the "one subject only" language of section 1(2)(d). Plaintiff-Relators further argue that cases holding that the court is without power to entertain a preelection challenge to the constitutionality of a statute have no application to a mandamus action directed to the Secretary of State if the mandamus action is an attempt to force her to comply with the "one subject only" provision.[3]

Assuming for the sake of argument that a duty was created, the issue then becomes at what point the Secretary of State is charged with the performance of that duty. ORS 250.045(1) requires that, prior to circulating a petition under section 1, Article IV, the petitioner must file the prospective petition with the Secretary of State. That statute reads:

"(1)   Before circulating a petition to initiate or refer a state measure under section 1, Article IV, Oregon Constitution, the petitioner shall file with the Secretary of State a prospective petition. The prospective petition for a state

---

[2] Article IV, section 1, as it presently exists, originated as HJR-16 and was adopted by the people in 1968.

[3] The Secretary of State, defendant, contends that the changes made in 1968 did not change her duties. The defendant refers to the legislative history behind the changes which supports her contention that there was no intention to change existing law at that time. Both parties agree that if there was no change, this court would have no jurisdiction.

measure to be initiated shall contain a statement of sponsorship signed by at least 25 electors. The Secretary of State shall date and time stamp the prospective petition, verify signatures on the statement of sponsorship, if any, and specify the form on which the petition shall be printed for circulation. The secretary shall retain the prospective petition."

ORS 250.065(2) provides that:

"When an approved prospective petition for a state measure to be initiated is filed with the Secretary of State, the secretary immediately shall send two copies of it to the Attorney General."

Plaintiff-Relators argue that the Secretary of State breached her duty on July 20, 1984 when she certified the petition and assigned to it a ballot measure number. However, in light of the statutes and existing caselaw, we hold that *if* the Plaintiff-Relators' allegation that a duty was created is correct, that duty would have been breached when the prospective petition was *approved* under ORS 250.065(2) and was sent to the Attorney General for a ballot title.[4] It is this determination that provides the first opportunity for the Secretary of State to exercise her official power with respect to the prospective petition. If, as the Plaintiff-Relators contend, there is a constitutional duty to act, it would arise at this time. It is in approving a prospective petition which did not comply with the alleged requirements of Article IV, section 1, that the Secretary of State's authority under the constitution and statutes first would be exceeded and her duty breached.[5]

---

[4] The Secretary of State may refer questions to the Attorney General under ORS 180.060(2) upon any question of law upon which the State of Oregon may have an interest, or subsection (5) of ORS 180.060 wherein "the Attorney General shall, when requested, perform all legal services for the State or any department or officer of the State." Thus, the Secretary of State could refer the question whether a proposed law "embraced one subject only and matters properly connected therewith" to the Attorney General at the time that the prospective petition was filed with the Secretary of State's office and forwarded to the Attorney General for preparation of a ballot title pursuant to ORS 250.065.

[5] One can visualize a time line in the submission procedure involved in the initiative process. No initiative petition may be circulated without the approval of the Secretary of State and the issuance of a ballot title. ORS 250.045(1), ORS 250.065(2),(3) and (4). Approval by the Secretary of State is conditioned not only upon verification of the required number of sponsor signatures, but also upon determination that the use of the initiative power in each case is authorized by the Constitution. *Holmes v. Appling, supra.* Once this initial determination is made, that decision is then reviewable by the courts. It is at this point that the process of submitting

In *Holmes v. Appling,* 237 Or 546, 554-55, 392 P2d 636 (1964), this court addressed the issue of when the duty of the Secretary of State to determine his constitutional authority arose. In *Appling,* Plaintiff-Relators were attempting to force the Secretary of State to furnish a ballot title for a proposed law. The Secretary of State refused to furnish the ballot title "because he had been advised by the Attorney General that the petition proposed a new constitution or a revised constitution and that the initiative power reserved to the people to amend the constitution does not permit the submission to the people of a revised or new constitution and that he was acting upon such advice." *Id* at 548.

In essence, the *Appling* court said that the Secretary of State had the initial duty to determine if the constitution allowed the action being taken by the Plaintiff-Relators stating: "[T]he defendant [Secretary of State] necessarily was required to determine whether our laws granted him authority to pursue the course which the plaintiffs requested." *Id* at 554. Thus, it would be at the approval stage of the prospective petition that the Secretary of State has the duty to determine if the requested action was constitutional.

The *Appling* court recognized that while neither the court nor the Secretary of State could review the merits of the proposed initiative for its constitutionality before enactment, the Secretary had an affirmative duty to determine whether the constitution granted the authority to approve the proposed initiative and to place it on the ballot in the first place. The distinction drawn by *Appling* is between the substantive

---

initiated measures to the people begins. If the Secretary of State has made an error in determining the extent of her constitutional authority, the clock for timeliness of review begins ticking at this initial step.

The next step is issuance of the ballot title. This is the second discrete step in the submission process. That decision is also reviewable by the court and any challenge must be made within 20 days or the right to challenge is lost. That was in fact done with respect to the ballot measure in question here. *Wells v. Paulus,* 296 Or 338, 675 P2d 482 (1984).

The third discrete step in the submission process is the verification of signatures and certification of the measure for ballot. Again, but not until the action is taken by the Secretary of State, the process is open for court review of the action taken. *State ex rel Sajo v. Paulus,* 297 Or 646, 688 P2d 367 (1984).

Therefore, in the submission process, a series of decisions must be made. As each decision is made, it becomes susceptible to challenge.

validity of the measure proposed and the attempt to use the initiative process for an invalid purpose.

■ Assuming a duty was created by the 1968 changes, then the court must examine if the extraordinary remedy of a writ of mandamus is appropriate in light of the facts in this case. "A writ of mandamus * * * is not awarded as a matter of right, but on equitable principles." *Buell v. Jefferson County Court,* 175 Or 402, 410, 152 P2d 578, *reh den* 154 P2d 188 (1944). *State v. Reid,* 207 Or 617, 631, 298 P2d 990 (1956); *Lafferty v. Newbry,* 200 Or 685, 702, 268 P2d 589, (1954). Further, mandamus "is an extraordinary remedial process which is awarded not as a matter of right, but in the exercise of a sound judicial discretion * * *." *Buell,* 175 Or at 408.

■ This court has long recognized that the concept of laches applies to writs of mandamus:

> "Laches is a bar to *mandamus,* and a petitioner desiring to avail himself of the benefits of such a writ must act promptly: [citation omitted]. * * *."

*Paine v. Wells,* 89 Or 695, 703, 175 P 430 (1918); *Buell,* 175 Or at 410.

When looking at the facts in this case, the breach of duty, if any, initially occurred on or about October 6, 1983, when the Secretary of State referred the petition to the Attorney General for a ballot title. In *Buell,* we stated:

> "An application for the writ should be made seasonably and within a reasonable time after the alleged default or neglect of duty. Delay which has been detrimental or prejudicial to the rights of the defendant or others interested may be sufficient cause for denial of the writ. Every case must be considered on its own particular facts: 35 Am. Jur., Mandamus, §312, page 65."

175 Or at 410.

Also, the *Buell* court indicated that there should be a good reason for not instituting an action at an earlier time stating: "No reason is set forth in the alternate writ for the plaintiff's not having instituted the proceeding at an earlier date." *Id* at 410. The *Paine* court stated very clearly the requirement for speedy action on the part of the relator:

> "It is well settled that the application for a writ of mandamus must be made within a reasonable time after the alleged

> default or neglect of duty, and that laches or delay in making an application unless satisfactorily explained may afford sufficient cause for its denial, particularly when the delay has been prejudicial to the rights of the respondent."

89 Or at 703. *See also State ex rel Redden v. Van Hoomissen,* 281 Or 647, 576 P2d 355, *reh den* 282 Or 415, 579 P2d 222 (1978).

■     Besides being prejudicial to the defendant[6] and the petition circulators, such delay puts an unreasonable burden on the court. The matter could have been litigated in the circuit court with ample time for the narrowing and clarification of issues through the normal judicial process. Rather than follow such a procedure, Plaintiff-Relators have waited until the eleventh hour to bring their present challenge. To wait until the last moment places the court in a position of having to steamroll through the delicate legal issues in order to meet the deadline for measures to be placed on the ballot. In light of the great value ascribed to the exercise of the initiative power by the people, by the Oregon Constitution, and the courts and the substantially negative impact that rushed, last minute reviews would have on the exercise of the initiative power, this court has been and should be very wary of last minute challenges. See *Kays v. McCall,* 244 Or 361, 373-74, 418 P2d 511 (1966).

■     If we ultimately allow preelection review under the "single subject only" language of Article IV, section (1)(2)(d), such review must be commenced within a reasonable time after approval by the Secretary of State and the submission to the Attorney General for a ballot title. This will allow participants in the initiative process to rely on the finality of such determinations so far as the attempts to collect signatures are concerned and at the same time provide potential challengers of the proposed measure adequate time to bring suit. *Cf. Emerson v. Deschutes County,* 46 Or App 247, 610 P2d 1259 (1980).

---

[6] While the Plaintiff-Relators in this case complain that their right to vote will be infringed if Ballot Measure 8 is placed on the ballot, they do not adequately explain why they did not bring the action at an earlier stage. If Plaintiff-Relators are successful, that would mean that the organizers and proponents of this measure had in essence wasted their time, energy and money to obtain sufficient signatures to be certified for placement on the ballot.

In view of the presumption favoring the exercise of the initiative power, the lack of any adequate reason given by the Plaintiff-Relators for their delay in making this challenge until the eleventh hour and the potential availability of post-election challenge under Article IV, section 20, should Ballot Measure 8 ultimately be approved, it is not unreasonable to hold that Plaintiff-Relators' challenge was not timely.

Writ dismissed.

**LENT, J.,** concurring in the result.

I agree with the majority that the alternative writ should be dismissed, but I disagree with the reason. Because of time constraints, I do not develop the reasons for my conclusions of law.

I would hold that there was no "proposed law" within the meaning of Article IV, section 1(2)(d), of the Oregon Constitution until the time that the Secretary of State verified that sufficient signatures had been collected to put the matter to the electors of this state.

I would further hold that under Article IV, section 1(4)(b), of the Oregon Constitution a proposed law that embraces more than one subject and matters properly connected therewith cannot be submitted to the electors.

I believe that the proposed law involved herein does "embrace one subject only *and matters properly connected therewith.*" (Emphasis added.)

**LINDE, J.,** dissenting.

The Court holds, and I agree, that the first time to challenge the Secretary of State's decision that a proposed initiative petition in legally proper form is when she submits the proposal to the Attorney General for preparation of a ballot title, assuming that the Secretary of State may reject a legally improper petition at all. This first occasion, however, is not also the secretary's last occasion to decide whether a proposed initiative measure should be placed in the ballot. I therefore dissent from the holding that the present challenge came too late.

## I.

The challenge to the legal form of the initiative petition in this case is based on Article IV, section 1(2)(d) of the Oregon Constitution, which requires that a "proposed law * * * shall embrace one subject only and matters properly connected therewith." Subsection (4)(b) of the same section provides that initiative measures shall be submitted to the people "as provided in this section and by law not inconsistent therewith." The issue therefore arises whether a "proposed law" may be submitted to the people if it is found to contain more than one subject and "properly connected" matters contrary to Article IV, section 1(2)(d).

This is a new issue on which this court's prior decisions are not conclusive. It arises because Article IV, section 1 was changed in 1968. The background may be briefly summarized as follows.

Before 1968, the constitutional provision for initiative petitions did not contain a one-subject rule. It has been assumed that once a measure was enacted by the people, it would be tested under the one-subject rule applicable to all statutes under Article IV, section 20, which provides that "[e]very Act shall embrace but one subject, and matters properly connected therewith * * *," although that has not squarely been decided. See *Johnson v. City of Astoria*, 227 Or 585, 591, 363 P2d 571 (1961); *State Ex Rel v. Richardson*, 48 Or 309, 319, 85 P 225 (1906), applying Art IV, § 20 to an initiative.

In 1962, the Commission on Constitutional Revision made two recommendations concerning the one-subject rule. The commission proposed that Article IV, section 20, quoted immediately above, be changed so as to read that each *bill* would be limited to one subject and matters connected therewith. Revised Constitution, Art IV, § 22 (1962) (emphasis added). At the same time, the commission proposed that the one-subject limitation apply to a "proposed law or amendment to the Constitution" when "proposed" by initiative petition. Revised Constitution, Art II, § 1.

A "bill" is a proposed law, not a law. An initiative petition also is a "proposed" law by the words of the constitution itself. The purpose of the changes recommended in the Revised Constitution is apparent from the substitution of "bill" for "act" and the insertion of "proposed law" in the

article dealing with initiative petitions. This apparent purpose is to move the time for scrutinizing the validity of proposed legislation forward into the legislative process, not leave it to be scrutinized after that process is over.

The rule limiting proposed laws to one subject is not concerned with constitutional limitations on the substance of public policies, such as tax limitations or the guarantees of individual rights. It is concerned with the lawmaking process itself. It aims to enhance the likelihood that distinct policies will be judged rationally on their individual merits rather than being packaged to attract support from legislators or constituencies with special interest in one provision and no worse than indifference toward other unrelated ones.

Once the legislative process is completed, however, it is at least debatable whether an otherwise valid provision of law should be vulnerable to challenge years after enactment, by someone whose personal interest is not in the political process but in escaping the effect of the law. That is the effect of present Article IV, section 20, and it is reasonable to believe that this effect is what the proposals in the Revised Constitution were designed to change.

The Revised Constitution was not enacted. But in 1967, the Legislative Assembly submitted, and the voters in 1968 adopted, a new text for the initiative provisions of Article IV, including the one-subject limitation on a "proposed law." Although little was said about it in the legislative history, there is no doubt that this change originated in the Revised Constitution, which the legislature studied and considered during the 1963 and 1965 sessions. As to completed enactments, however, the one-subject limitation on "Acts" stated in Article IV, section 20, was not involved in the change and has been left intact.

I conclude, therefore, that under Article IV, section 1, an initiative petition is not eligible to be submitted "as provided in this section" if it is a "proposed law" that embraces more than one subject and matters properly connected therewith.

## II.

I agree with petitioners and with intervenors that the court should not postpone deciding that issue until a possible

later challenge. I disagree with respondent that a decision at this stage would be an interference with the public's right to initiate legislation. This measure may satisfy the one-subject rule, although no one besides Justice Lent reaches that issue today. But if a proposal does violate the constitutional rule, it is no advantage to the public to learn this after all the time and effort to obtain its enactment rather than earlier. The one is no more an interference with the right to submit valid initiative measures than the other, and the earlier decision may even come in time to correct a fatal flaw.

Because a proposed law that contains more than one subject is not a legally proper initiative petition, the responsible officials must determine whether or not it is eligible to go through the initiative process. The statutes do not assign the courts a direct role in that determination, as they do in reviewing ballot titles or explanatory statements for the voter pamphlet. *See* ORS 250.085 (ballot titles); ORS 251.235 (explanatory statements). Nor is review of an initiative petition a lawsuit between proponents and opponents of the proposed measure. *Teledyne v. Paulus,* 297 Or 665, 687 P2d 1077 (1984). It is imprecise to speak of "preenactment review" by the courts. Rather, a court enters a case such as this only in a form of judicial review of the action or inaction of a responsible official, in this case the Secretary of State.

Under the statutes, the chief elections officer is the Secretary of State, respondent in this case. ORS 246.110. The Court notes that prospective initiative petitions must be filed with the secretary. ORS 250.045(1). The secretary is directed to send two copies of an "approved" prospective petition to the Attorney General for preparation of a ballot title. ORS 250.065(2). The statute presupposes that the Secretary of State has a function to "approve" the prospective petition as to eligibility—of course not as to policy—at this stage. According to the Court, that is when petitioners should have sought judicial review of her action. But the Secretary of State again has an official duty to decide whether a petition is eligible to be placed on the ballot when the actual petition is filed with her for that purpose. ORS 250.105, ORS 254.085.

Normally the manner and timing of judicial review is itself prescribed by statute. ORS 246.910(1) provides:

"A person adversely affected by any act or failure to act by the Secretary of State or a county clerk under any election law, or by any order, rule, directive or instruction made by the Secretary of State or a county clerk under any election law, may appeal therefrom to the circuit court for the county in which the act or failure to act occurred or in which the order, rule, directive or instruction was made."

The statute does not prescribe a time or procedure for such an "appeal," although the provision of subsection (3) that the courts may give precedence to such appeals suggests that they should be expeditious. I do not disagree with the Court that the secretary's initial decision to approve or not to approve a prospective initiative petition for transmission to the attorney general may be an occasion for judicial review.[1] Thereafter, however, ORS 254.085 directs the Secretary of State to "furnish to each county clerk a certified statement of * * * the state measures to be voted on," and to do so no later than 61 days before the date of the election. Certainly this is a "directive or instruction made by the Secretary of State" from which ORS 246.910 allows an "appeal" to a circuit court. It therefore is no answer to a challenge at this stage that someone might have brought a challenge at an earlier stage.

The present proceeding, of course, was not brought under ORS 246.910; it is upon an alternative writ of mandamus from this court. This may be a questionable avenue for seeking review, in light of the availability of other legal remedies. *See State ex rel Sajo v. Paulus*, 297 Or 646, 688 P2d 367 (1984). Because it is a mandamus proceeding, the Court holds that it is barred by laches. I strongly disagree that a court should turn away a challenge to an impending unlawful official action as untimely, in the absence of statutory time limits, unless the subject concerns transactions with private persons whose rights may have been irremediably prejudiced by the delay. *See DeFazio v. Washington Public Power Supply System*, 296 Or 550, 599, 679 P2d 1316 (1984) (Lent, J., concurring). To hold otherwise in effect means that officials are free to go forward contrary to law and perhaps contrary to the public interest once no litigant has come forward in the time that the court deems reasonable.

---

[1] Possibly another occasion might arise when the Attorney General prepares or declines to prepare a ballot title.

The Court might well have denied the petition for the discretionary writ and left the issue for later resolution if the proposed measure passes. But having issued the alternative writ, in my opinion it should reach the merits. For that reason, I dissent.

Roberts, J., joins in this dissent.