Argued and submitted October 7, judgment in mandamus action affirmed, judgment in statutory action reversed and remanded with instructions October 13, 1986

STATE ex rel BUNN et al,
*Appellants,*

*v.*

ROBERTS et al,
*Respondents.*

(TC 86-11688; SC 33299 (control))

BUNN et al,
*Respondents,*

*v.*

ROBERTS et al,
*Appellants.*

(TC 86-11827; SC S33297)
(Cases consolidated)

726 P2d 925

C. Gregory West, Judge.

Thomas O. Alderman, Eugene, argued the cause and filed the brief for appellants/respondents Bunn and DeKlotz.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause and filed the brief for respondents/appellants Roberts, Rutherford, Monterossi and Munn. With him on the brief was Dave Frohnmayer, Attorney General, Salem, Virginia L. Linder, Solicitor General, Salem, and John A. Reuling, Jr., Assistant Attorney General, Salem.

Robert C. Cannon, Marion County Legal Counsel, Salem, argued the cause and filed the brief for respondent County Clerks. With him on the brief was John Leahy, Multnomah County Counsel, Portland, John M. Gray, Jr., Yamhill County Counsel, McMinnville, Candace Haines, Assistant Benton County Counsel, Corvallis, William Van Vactor, Lane County Counsel, Eugene.

GILLETTE, J.

Peterson, C. J., filed a concurring opinion in which Jones, J., concurred.

## GILLETTE, J.

These consolidated appeals arise from two proceedings in the Circuit Court for Marion County. In the first proceeding (SC S33299), plaintiff-relators sought a writ of mandamus ordering defendant Secretary of State to certify to the defendant county clerks and election officials a ballot without an estimate of the fiscal effects of Ballot Measure 6, which relates to public funding for abortions, and ordering the defendant county clerks and election officials to remove from the ballot any such estimate. In the alternative, plaintiff-relators asked the court to specify a different estimate of the fiscal effects of Ballot Measure 6,[1] order defendant Secretary of State to certify a ballot to the county clerks containing the estimate and order defendant county clerks and election officials to substitute that estimate for the one previously certified by defendant Secretary of State.

In the second proceeding (SC S33297), plaintiffs filed an action pursuant to ORS 246.910,[2] naming as defendants the Secretary of State, the State Treasurer, the Director of the

---

[1] Ballot Measure 6, which will be on the November 4, 1986, general election ballot, proposes to amend the Oregon Constitution by adding the following language:

"State monies must not be used to fund abortions, except to prevent the death of the mother."

Plaintiff Bunn is campaign chairman of Taxpayers for Responsible Government, the organizing committee for the proponents of Ballot Measure 6. Plaintiff DeKlotz is one of the chief petitioners for Ballot Measure 6.

[2] ORS 246.910 provides:

"(1) A person adversely affected by any act or failure to act by the Secretary of State or a county clerk under any election law, or by any order, rule, directive or instruction made by the Secretary of State or a county clerk under any election law, may appeal therefrom to the circuit court for the county in which the act or failure to act occurred or in which the order, rule, directive or instruction was made.

"(2) Any party to the appeal proceedings in the circuit court under subsection (1) of this section may appeal from the decision of the circuit court to the Court of Appeals.

"(3) The circuit courts and Court of Appeals, in their discretion, may give such precedence on their dockets to appeals under this section as the circumstances may require.

"(4) The remedy provided in this section is cumulative and does not exclude any other remedy against any act or failure to act by the Secretary of State or a county clerk under any election law or against any order, rule, directive or instruction made by the Secretary of State or a county clerk under any election law."

Executive Department and the Director of the Department of Revenue (hereafter "defendants"). The four defendants together constitute the committee responsible for preparing an estimate of the amount of expenditure that would be required to meet the provisions of the measure if it were enacted under ORS 250.125, which provides:

> "When a state measure involves expenditure of public money by the state, reduction of state revenues or raising of funds by the state by imposing any tax or incurring any indebtedness, the Secretary of State, with the assistance of the State Treasurer, the Director of the Executive Department and the Department of Revenue, shall estimate the amount of expenditure, reduction in state revenues, tax revenue or indebtedness and interest which will be required to meet the provisions of the measure if it is enacted. The estimate shall state the recurring annual amount involved, or, if the measure does not involve a recurring annual amount, the total amount. The estimate shall be certified by at least two of the officers named in this section and, not later than the 90th day before the election at which the measure is to be voted upon, it shall be filed, with the date upon which it is based, with the Secretary of State. The estimate shall be printed in the voters' pamphlet and on the ballot unless the measure involves only administrative expenses not exceeding $50,000 per year."

In this second action, plaintiffs challenged defendants' certified estimate of the financial effects of Ballot Measure 6 prepared pursuant to ORS 250.125. Plaintiffs alleged that no fiscal effects estimate should have been prepared, because Ballot Measure 6 does not involve an expenditure of state money, a reduction in state revenues, the imposition of a tax by the state or the incurring of an indebtedness by the state. Alternatively, plaintiffs challenged the estimate of financial effects which defendants certified, contending the estimate was inaccurate and partial because it was based on assumptions which were "patently false, misleading, partial to the opponents of Measure Six and harmful to its prospects at the polls."

■    In SC S33299 (the mandamus action), the circuit court entered orders dismissing the petition as to all defendants. These orders were reduced to judgment and judgment was entered on October 3, 1986. Plaintiff-relators appealed from this judgment dismissing the petition. In SC S33297,

(the ORS 246.910 action), the circuit court held that ORS 250.125 does not apply to Ballot Measure 6, that defendants must withdraw their certification of financial effect of Ballot Measure 6 and that defendant Secretary of State must thereafter re-certify Ballot Measure 6 to each county clerk with no financial estimate. Defendants appealed from this judgment. The Court of Appeals certified the appeals to this court. ORS 19.210. Because of the novel problem of the timing of review, we accepted the certification, although ordinarily there will be no reason why issues of election law, like any other, cannot be decided by the Court of Appeals. *See State ex rel Sajo v. Paulus,* 297 Or 646, 649, 688 P2d 367 (1984). We affirm as to S33299, but reverse as to S33297.

The chronology of this dispute is important. On July 11, 1986, the officials specified in ORS 250.125 (or their delegates) met informally in the office of the Secretary of State for the purpose of considering an estimate of fiscal effects for Ballot Measure 6. Plaintiff Bunn attended this meeting, accompanied by legal counsel. Opponents of the measure also had been notified in advance that the meeting would be held. They submitted materials for the committee's consideration, although they did not attend personally. At this meeting, plaintiff Bunn's legal counsel requested that any estimate of the fiscal effects of Ballot Measure 6 be omitted from the ballot on the theory that ORS 250.125 does not apply to Ballot Measure 6 because the measure only prohibits state expenditures. The Secretary of State advised plaintiff and his legal counsel that this request would be denied.

On or about August 6, 1986, defendants certified, pursuant to ORS 250.125, the following estimate of the financial effect of Ballot Measure 6:

"ESTIMATE OF FINANCIAL EFFECT: Abortions funded by the state cost an average of $200 each. Medical expenses for each birth funded by the state are $2,140. There were 1,224 state-funded abortions in the past year. Passage of this measure would mean a General Fund savings of $253,833 in medical payments not used for abortions. General Fund cost for 1,224 state-funded deliveries would mean an increase in expenditures of approximately $2.6 million, assuming 100 percent of previous abortion cases would carry pregnancy to term. The net financial effect, after accounting for savings for abortions not performed, would be an increase in General

Fund expenditures of about $2.4 million per year. Factors such as number of cases which may find private funding for abortion or abortions performed under the medical exception provision in the measure cannot be determined but may affect the eventual financial impact of the measure."

August 6, 1986, was the 90th day prior to the November 4, 1986, general election.

On August 25, 1986, plaintiff-relators filed an original petition for mandamus in this court. The petition did not establish that the relief sought could not be obtained from the circuit court. We denied the petition. On August 29, 1986, plaintiff-relators filed their petition for writ of mandamus in the Circuit Court for Marion County. On September 19, 1986, shortly after the entry of orders from the circuit court dismissing their mandamus action, plaintiffs filed their action under ORS 246.910.

As noted, plaintiffs appeal the trial court's dismissal of their mandamus action. Defendants appeal the court's judgment in the ORS 246.910 case directing the Secretary of State to remove the estimate of amount of expenditure from the ballot. Our analysis of the ORS 246.910 action resolves both appeals.

We begin with an analysis of the defendants' — and, particularly, the Secretary of State's — duties under ORS 250.125. The statute contemplates that the following discrete actions or steps be taken:

1. The Secretary of State, with the assistance of the State Treasurer, the Director of the Executive Department and the Department of Revenue, shall prepare an estimate of a measure's fiscal impact.

2. The estimate shall be certified by at least two of the officials listed.

3. The estimate, after certification, shall be filed with the Secretary of State not less than 90 days prior to the relevant election.

4. The estimate shall be printed in the voters' pamphlet and on the ballot, unless it involves administrative expenses not exceeding $50,000.

In *Ellis v. Roberts,* 302 Or 6, 725 P2d 886 (1986), this court held that a one-subject challenge under Article IV, section 1(2)(d) of the Oregon Constitution brought pursuant to ORS 246.910 must be made within 60 days of the date the Secretary of State approves an initiative petition pursuant to ORS 250.065(2). In arriving at this conclusion, this court asked and answered three questions: 1) Must actions be filed in a reasonable time? 2) When does the reasonable time period begin to run? 3) How long does the period of reasonable time extend?

In answering the first question in the affirmative, *Ellis* quoted from *State ex rel Fidanque v. Paulus,* 297 Or 711, 688 P2d 1303 (1984), which had noted that the initiative process — like the process involved here — involves a series of "discrete steps" or decisions, and that as each decision is made it becomes susceptible to challenge. Quoting further from *Fidanque,* this court said:

> " 'Besides being prejudicial to * * * the petition circulators, * * * delay puts an unreasonable burden on the court. The matter could have been litigated in the circuit court with ample time for the narrowing and clarification of issues through the normal judicial process. * * * To wait until the last moment places the court in a position of having to steamroll through the delicate legal issues in order to meet the deadline for measures to be placed on the ballot. In light of the great value ascribed to the exercise of the initiative power by the people, by the Oregon Constitution, and the courts and the substantially negative impact that rushed, last minute reviews would have on the exercise of the initiative power, this court has been and should be very wary of last minute challenges.' 297 Or at 718." *Ellis v. Roberts, supra,* 302 Or at 16.

While noting that *Fidanque* was a mandamus proceeding, in which the court had dismissed on laches grounds an original proceeding before us, *Ellis* also noted that our remarks in *Fidanque* "have an equal place here." *Id.* We then held that

> "[a]n eleventh-hour action in the trial court leaves no more time for 'the narrowing and clarification of issues through the normal judicial process' than did the eleventh-hour petition for writ of mandamus in *Fidanque.* If these actions are not brought within a reasonable time after they first could have been brought, meaningful judicial review will be difficult, if

not impossible. We hold that actions like the present one must be brought within a reasonable time. * * *" 302 Or at 17.

*Ellis* answered the second question also by adhering to the answer we gave in *Fidanque:* a challenge must be brought within a "reasonable time" after an initiative measure has been approved by the Secretary of State under ORS 250.065(2). This step in the initiative process was the first opportunity that the Secretary of State had to review the initiative measure for one subject; hence, it was at this step that her duty to act arose, and the time to challenge her exercise of that duty began to run.

Finally, *Ellis* decided that 60 days was a reasonable period following the Secretary of State's approval of an initiative measure within which a challenge to her approval of the measure for one subject could be brought. We arrived at the 60 day period through applying, by analogy, ORS 183.484, which governs review of orders in other than contested cases. Noting the similarity between the Secretary of State's determination that a proposed measure does not violate the one-subject rule and an order in other than a contested case, we reasoned that the 60 day period for challenging orders in other than contested cases was appropriate in the context of that case.

Defendants argue that this court should follow in this case the same approach we used in *Ellis,* adapting it to the context of a challenge to the Secretary of State's determination pursuant to ORS 250.125 that a state measure requires a fiscal effects estimate. We agree that the methodology is applicable here.

■ ORS 250.125 does not impose a time deadline by which a determination as to whether a fiscal effects estimate is required must be made. The only time deadline has to do with the deadline for filing the estimate after the estimate is certified, *i.e.,* 90 days before the election. In the present case, however, defendants argue that the Secretary of State had decided that Ballot Measure 6 required a fiscal effects estimate and had informed plaintiffs of that fact on July 11, 1986, when she denied their request that she not prepare a fiscal effects estimate. They argue, therefore, that the reasonable time within which plaintiffs should have challenged defendant Secretary of State's determination that Ballot Measure 6

required a fiscal effects analysis began to run when they first knew of her decision — July 11, 1986.

■ We disagree. The process contemplated by ORS 250.125 is not such a public one that all persons — as opposed to the few, if any, who are especially interested in a particular measure — may fairly be said to be on notice of the Secretary of State's preliminary views on whether an estimate of financial impact is warranted. Neither is her request for advice from the other three officers designated by ORS 250.125 such an event, nor is the delivery of their advice. The one clear date of which the public at large has notice is that designated in the statute by which the Secretary of State must have certified an estimate, if there is to be one. That date is the 90th day before the election at which the particular measure is to be considered by the voters. In this case, that date was August 6, 1986. Plaintiffs needed to file their action within a reasonable time after this date, in order to have it considered. The question is, what is a "reasonable time" in this context?

■ Defendants argue that, while a 60 day period may have been a reasonable time within which to challenge the Secretary of State's approval of an initiative measure for one subject, it is not a reasonable period within which to challenge the Secretary of State's determination that a measure requires a fiscal effects estimate. We agree. Given the inevitably close proximity of this determination to the election at which the measure will be considered, the statutory deadlines by which the Secretary of State must act to certify measures and candidates to be voted on to the county clerks will have passed before the 60 day period for bringing a challenge in the first instance will have expired. Such a deadline would leave the circuit court, let alone any appellate court, with no time to narrow and clarify the issues in the judicial process while still enabling the Secretary of State to fulfill her statutory responsibilities to provide for an orderly election. Another, shorter limit is needed — again one which, in the absence of statutory specifications, we are left to draw by analogy, as in *Ellis.*

Defendants argue, and we agree, that the closest analogy to the process set forth in ORS 250.125 is the explanatory statement process, for which judicial review is provided in ORS 251.235 by petition to this court. Under that statute, review of an explanatory statement must be sought

within five days of the expiration of the last day for filing a revised explanatory statement with the Secretary of State (*i.e.,* the 90th day before the election). By analogy, such a five day requirement is appropriate for challenges to the determination by the Secretary of State that a state measure requires a fiscal effects estimate, particularly where the period begins to run from the same late date in the process. Although very short, a five-day challenge requirement at least would provide the circuit court in most instances with some opportunity meaningfully to consider the merits of a challenge and the Secretary of State's defenses to that challenge. *See Ellis v. Roberts, supra,* 302 Or at 18.

■ In this case, the "reasonable time" period of five days began to run on August 7, 1986. It expired on August 11, 1986. Plaintiffs did not file their mandamus action in the circuit court until August 29, 1986, and did not file their action under ORS 246.910 until September 19, 1986. Plaintiffs' delay in instituting review proceedings placed this court and the entire elections process in an untenable position. By the time this court heard oral argument in this case — October 7, 1986 — ballots for all counties containing the fiscal effects estimate challenged in these consolidated cases had already been printed. The defendants also assert that the printing of voters' pamphlets containing the fiscal effects estimate challenged in this case is well along. Absent a specific legislative authorization, plaintiffs cannot, at what is literally the stroke of midnight, challenge the Secretary of State's determination that a state measure does or does not require a fiscal effects estimate. The trial court's ruling to the contrary was error. The case is reversed and remanded to the trial court with instructions to dismiss it as not timely filed.

■ Our disposition of the action under ORS 246.910 also dictates our disposition of the mandamus case. While the trial court expressed other reasons for its dismissal, we hold that the case should in any event have been dismissed as not timely filed. *See Ellis v. Roberts, supra,* 302 Or at 18-19; *State ex rel Redden v. Van Hoomissen,* 281 Or 647, 576 P2d 355, *reh den* 282 Or 415, 579 P2d 222 (1978).

The judgment in case number S33299 (trial court number 86-11688), *State ex rel Bunn v. Roberts,* is affirmed. The judgment in case number S33297 (trial court number

86-11827), *Bunn v. Roberts,* is reversed and the case is remanded with instructions that it be dismissed.

**PETERSON, C. J.,** concurring.

I concur in the opinion of the court, but write separately to express concerns about judicial review of pre-election decisions of the Secretary of State.

We have decided a number of such cases by judicial "enactment" of procedural rules. This is one such case. Others include *Ellis v. Roberts,* 302 Or 6, 725 P2d 886 (1986) (challenge to ballot title under ORS 249.910(1) must be brought within 60 days after preliminary petitions for a ballot title have been approved by Secretary of State; time limit found by looking to other expressions of legislative policy on similiar issues), and *State ex rel Fidanque v. Paulus,* 297 Or 711, 717, 688 P2d 1303 (1984) (mandamus action brought to challenge ballot title forestalled by application of the doctrine of laches). I use the word "enactment" because what we have been required to do is to create, on a case-by-case basis, a procedural framework for judicial review of the decisions of the Secretary of State. Although a court may be the only forum currently available for cleaning up issues that the legislature has overlooked or is unwilling to decide, *see* Sadler, *Voters Get New Barrier to Hurdle,* The Oregonian, July 7, 1986, the legislative process is better suited to create the needed procedural framework.

In other areas of election law, the legislature has created a statutory framework for the review of elections decisions of the Secretary of State. *See* ORS 250.065, 250.067, 250.085 (procedures for preparation of ballot titles for state measures and judicial review); ORS 251.205 to 251.235 (procedures for preparation of state ballot measure explanatory statement and for judicial review); ORS 250.175, 250.195 (procedures for preparation of ballot titles for county measures and for judicial review); ORS 250.275, 250.296 (procedures for preparation of ballot title for city measures and for judicial review). *See also* ORS 251.055, 251.155 (Secretary of State is to reject certain statements offered for filing and printing in voters' pamphlet, but such material submitted not admissible as evidence to enjoin publication of voters' pamphlet). The legislature has also dictated what constitutes a timely action with respect to other issues in the election

process. *See* ORS 260.225 (court procedures to compel a candidate to file a correct statement of expenditures and contributions), ORS 260.532 (procedures and remedies for persons aggrieved by false publication relating to candidate or measure). The legislature should consider enactment of further procedural statutes governing the review of elections decisions of the Secretary of State and others involved in the election process not presently covered by statute.

Plaintiffs' appeal under ORS 246.910 was filed on September 19, 1986, final judgment in the trial court was entered on September 26, 1986, the notice of appeal was filed on September 29, 1986, the Court of Appeals certified the case to us on October 3, 1986, briefs were filed on October 6, 1986, and we heard the case at 11:30 a.m. on October 7, 1986. At oral argument, we were told that absentee ballots must be mailed before the end of the day. *See* ORS 253.045(1). At our conference immediately following oral argument, the court reached agreement on the outcome and an order issued the afternoon of October 7, 1986, with opinion to follow.[1]

One negative result of the lack of established statutory procedures is this: Questions that should be answered on their merits often are not reached, for neither the parties nor their lawyers know what procedures are to be followed. Here, plaintiffs' lawyers filed two actions — one for mandamus and one an appeal to the circuit court under ORS 246.910 — only to learn, at this level and for the first time, that the appeal was untimely.

Another negative result is that no court — neither the trial court, the Court of Appeals, nor the Supreme Court — has had a fair opportunity to consider the merits of the controversy, notwithstanding Herculean efforts by the lawyers to fairly present the issues. The courts' certainty quotient is lower than it should be when important decisions must be made virtually instantaneously.[2]

---

[1] The order reads, in part:

"The judgment in *State ex rel Bunn v. Roberts,* Marion County Circuit Court case number 86-11688, is affirmed. The judgment in *Bunn v. Roberts,* Marion County Circuit case number 86c-11827, is reversed and the case is remanded with instructions that it be dismissed. An opinion will issue in due course."

[2] Although 100 percent certainty, even at the moment of decision, is not always present, hidden factors of unreliability are great in cases such as this, even though the opinion contains no unexpressed doubt. *See* Schaefer, *Precedent and Policy,* 34 U Chi L Rev 3, 7 (1966).

The worst result is that those concerned — the proponents, opponents, election officials, courts and the electorate — derive no benefit from the resolution of important elections questions on technical procedural grounds.

The opinion in these cases should not be construed as approving the Secretary of State's decision to include an estimate of financial effect on Ballot Measure 6. The trial judge may have been correct in ruling that a measure that prohibits spending state funds is not a measure that "involves expenditures of public money by the state." ORS 250.125. We do not reach that important question, for we have decided this case on a procedural ground.

Jones, J., joins in this concurring opinion.