Argued and submitted September 18, the judgment of the trial court is affirmed
September 27, 1990

Robert G. CRUMPTON,
*Appellant,*

*v.*

Barbara ROBERTS,
Don McIntire, George Choban
and Thomas P. Dennehy,
*Respondents.*

(CC 90C-11372; CA A66349; SC S37471)

798 P2d 1100

Robert D. Durham, Portland, argued the cause for appellant. With him on the briefs were Margaret S. Olney and Bennett & Durham, Portland.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondent Roberts. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Greg Wasson, Salem, argued the cause and filed a brief for respondent McIntire.

Gregory W. Byrne, of Byrne & Barrow, Portland, argued the cause and filed a brief for respondents Choban and Dennehy.

PETERSON, C. J.

## PETERSON, C. J.

This case involves the initiative process. The plaintiff seeks judicial review of an order in other than a contested case, ORS 183.484, as well as a declaratory judgment, ORS 246.910 and ORS 28.010. In March 1989, the Secretary of State approved a specific form of initiative petition for circulation to obtain signatures on Ballot Measure 5. Thereafter, the legislature amended the law to require that initiative petition signature sheets show whether paid circulators were being used to collect signatures. The amendment was effective October 3, 1989. The crux of the plaintiff's claim is that the Secretary of State erred by failing to require that all initiative petition signature sheets circulated on and after October 3, 1989, for Ballot Measure 5 contain a statement disclosing whether any petition circulator would be paid for obtaining signatures of electors.

The trial court granted summary judgment to the defendants, and the plaintiff appealed. The Court of Appeals certified the case to this court, and we accepted certification. ORS 19.210; ORAP 10.10. We affirm the judgment of the trial court.

This case involves the construction of ORS 250.045. More specifically, it involves the effect of a 1989 amendment to that statute, Or Laws 1989, ch 959, § 3, that took effect on October 3, 1989 (the 1989 amendment). The entire text of ORS 250.045 is set forth in the appendix to this opinion, with the 1989 additions in bold letters.

ORS 250.045 contains directions concerning the first three steps of the initiative process.

1. *Prospective petition.*

The first step is the filing with the Secretary of State of a "prospective petition"[1] by an interested person. ORS 250.045(1). The prospective petition must contain the signatures, certified by a county clerk, of at least 25 electors. In addition, the prospective petition must include "a statement declaring whether one or more persons will be paid money or

---

[1] " 'Prospective petition' means the information, except signatures and other identification of petition signers, required to be contained in a completed petition." ORS 250.005(4).

other valuable consideration for obtaining signatures of electors on the initiative or referendum petition." ORS 250.045(4). When the prospective petition is filed, the Secretary of State stamps the date and time of receipt on it and retains it. ORS 250.045(1).

### 2. *Ballot title.*

Second, after the prospective petition is filed, the Attorney General prepares and certifies a ballot title. There also is a statutory procedure for challenging the ballot title before this court. ORS 250.065, 250.067, and 250.085.

### 3. *Initiative petition.*

Third, after the ballot title has been certified, the "initiative petition" is prepared. The initiative petition must include, among other things, a cover containing the certified ballot title, the names and residence addresses of not more than three persons as chief petitioners, and one or more signature sheets. ORS 250.045(3) and (5).

Before October 3, 1989, the initiative petition was not required to contain a statement declaring whether circulators would be paid. ORS 250.045(4) (1987). The 1989 amendment, which became effective October 3, 1989, requires each signature sheet on an initiative petition to contain that information. In a nutshell, the question before us is whether that amendment applies to signatures obtained on and after October 3, 1989, on an initiative petition approved for circulation before that date.

That brings us to the facts, which are not substantially in dispute. We draw upon the plaintiff's complaint:

"Plaintiff, Robert C. Crumpton, is a resident, registered voter and taxpayer of the State of Oregon.

"Defendant, Barbara Roberts, is the Secretary of State of the State of Oregon. Defendant Roberts will hereinafter be referred to as 'the Secretary of State.'

"Defendants, Don McIntire, George Choban and Thomas P. Dennehy are members of 'Protect Oregon Property Society,' an organization formed to promote a ballot initiative which would place a constitutional limit on property taxes for schools. Defendants McIntire, Choban and Dennehy will hereinafter be referred to as 'petitioners.'

"* * * * *

"ORS 250.045, relating to petitions for state ballot measures, was amended by the 1989 legislature to require that all signature sheets include a statement disclosing whether petition circulators are receiving payment for obtaining signatures. * * *

"The 1989 legislative amendments to ORS 250.045 became effective on October 3, 1989.

"* * * * *

"On or about January 24, 1989, petitioners submitted a prospective initiative petition seeking to place a constitutional limit on property taxes for schools.

"At that time, petitioners stated that no person would be paid to obtain signatures on the prospective petition.

"On or about February 23, 1989, the Secretary of State certified the following ballot title:

"* * * * *

"Petitioners submitted a sample cover and signature sheet for the Secretary of State's approval on or about March 17, 1989.

"In a letter dated March 14, 1989, the Secretary of State approved petitioners' cover and signature sheet for circulation.[2]

"On or about May 24, 1989, petitioners submitted an election division form declaring that one or more persons would be paid for obtaining signatures.

"* * * * *

"None of the cover and signature sheets approved by the Secretary of State contained a statement of disclosure regarding paid petition circulators as required by ORS 250.045(5) [sic: (4)] and (5). They thus do not conform to the Secretary of State's sample signature sheet, Exhibit A.

"The Secretary of State took no other steps to ensure that all initiative petitions circulated after October 3, 1990 contain the required statement of disclosure.

"On or about May 8, 1990, petitioners submitted initiative

---

[2] The record shows that the letter enclosing the cover and signature sheet was dated March 15, 1989. It bears a "received" stamp of March 17, 1989. The record does not show why the letter of approval, which is signed "Larry E. Bevens, Election Manager," has the earlier March 14, 1989, date.

petition signature sheets purporting to contain at least 114,000 signatures.

"A substantial portion of the signatures filed in support of the initiative petition were collected on or after October 3, 1989, on signature sheets which did not contain the required disclosure of the paid status of petition circulators. When the number of these invalid signatures is subtracted from the total signatures submitted, the petition does not have the support of the legally required number of signatures to justify placement on the ballot.

"Plaintiff, through his attorney, notified the Secretary of State during the week of May 14, 1990, that he believed many of the signatures were invalid because the petitions failed to contain the requirements set forth in ORS 250.045. In a letter dated May 18, 1990, plaintiff requested that those signature sheets which failed to contain the disclosure regarding paid petition circulators be declared unlawful and void.

"The Secretary of State responded by letter dated May 24, 1990, that she would not apply the 1989 legislation 'retroactively' since the original petition was approved March 14, 1989.

"* * * * *

"Because the Secretary of State counted signatures which were obtained in violation of ORS 250.045, her certification of the initiative measure is unlawful and invalid."

In the appendix to the plaintiff's brief, he summarizes the requested relief this way:

"The prayer of the complaint is for a judgment (1) declaring that the Secretary of State acted unlawfully when she verified petition signatures gathered on or after October 3, 1989 on signature sheets which did [not] disclose the paid status of the petition circulators; (2) declaring that her certification of the ballot measure for the general election ballot is void; and (3) enjoining the Secretary of State from placing the ballot measure initiative on the general election ballot."[3]

---

[3] In his brief in this court, the plaintiff asks for this relief:

"In order to correct the violation, plaintiff can identify only one remedy: the court should order the Secretary of State to recalculate the number of signatures supporting the petition, after excluding those gathered on illegal signature sheets. If the petition is not supported by enough signatures, then the measure should be removed from the general election ballot."

## ANALYSIS

The Constitution of Oregon expressly provides that "[t]he people reserve to themselves the initiative power." Or Const, Art IV, § 1(2)(a). Section 1(4)(b) of Article IV provides:

"Initiative and referendum measures shall be submitted to the people as provided in this section and by law not inconsistent therewith."

Pursuant to that express authority, the legislature has enacted ORS 250.045 and other statutes pertaining to the initiative process.

In amending ORS 250.045 in 1989, the legislature did not state expressly whether the amendment applied to initiative petitions already approved for circulation by the Secretary of State before the amendment's effective date.

The legislature could have answered this question by expressly providing whether it intended the 1989 amendment to apply to initiative petitions previously approved and in circulation. It did not. We do not believe, however, that the omission is dispositive, one way or the other. Nor does the legislative history give any guidance as to the intended application of the effective date.

■ There is no ambiguity about the three steps required to be taken before an initiative petition can be circulated to the electorate: (1) interested persons must file a "prospective petition"; (2) a ballot title must be prepared and certified; and (3) the initiative petition must be prepared. We analyze the 1989 amendment in the light of that process.

■ The 1989 amendment requires each sheet of signatures on an initiative petition to contain, not only the caption of the ballot title, but also "the disclosure required by subsection (4)." The phrase "an initiative petition" in subsection (5) refers to the initiative petition approved by the Secretary of State following the completion of steps 1 and 2. The first sentence of ORS 250.045(1) distinguishes between "the petition" to be circulated for signatures on an initiative or referendum and the "prospective petition." So does the sentence, "The Secretary of State shall date and time stamp the prospective petition and specify the form on which the petition shall be printed for circulation."

It is not only in ORS 250.045 that the terms "prospective petition" and "the petition" have two different meanings, however. The difference between the "prospective petition," on the one hand, and the "petition," "initiative petition," or "referendum petition," on the other, permeates the statutory scheme. For example, ORS 250.065 directs the Secretary of State to "authorize the circulation of the petition" in a particular manner after "a prospective petition for a state measure" is filed. ORS 250.015(1) requires the Secretary of State to "[d]esign the form of the prospective petition, and the initiative and the referendum petition." ORS 250.025 specifies who can sign "an initiative * * * petition." ORS 250.105 provides for filing the "initiative or referendum petition" with the Secretary of State for the purpose of verifying the signatures. ORS 250.043 allows the initiative petition to be accepted with photocopied signatures under certain conditions.

In the light of this clear distinction throughout the statutory scheme, a reasonable reading of ORS 250.045 as a whole is that the final triggering event in the pre-circulation process is the specification and approval of the initiative petition after certification of the ballot title. A change in the law, such as the 1989 amendment, would then apply to initiative petitions approved after the effective date of the change.

In construing legislation that affects initiatives in process, it is reasonable to assume that the legislature intended that there be stability in the elections process and that the legislature did not intend to interfere with ongoing efforts to collect signatures on approved initiative petitions. We do not believe that the legislature intended that, effective October 3, 1989, all signature-collecting efforts must cease until the Secretary of State approved a new initiative petition form for all initiatives previously approved. Rather, it is more reasonable to expect that the legislature intended, as the statute implies, the new requirements of ORS 250.045(5) to apply only to initiative petitions approved thereafter.[4]

---

[4] The record shows that, on October 4, 1989, the petitioners submitted a cover and signature sheet, requesting permission to allow printing of the cover and signature sheets on lighter weight 20 lb. bond paper. The Secretary of State approved that request on October 10, 1989. Another sample of the petitioners' cover and signature sheet was approved on January 12, 1990. Neither of those changes was sufficient to constitute a new petition that would trigger a new overall approval process. *Compare* ORS 250.045(2) (which concerns amendments to the prospective petition).

Two other questions remain. The first is whether the plaintiff's complaint stated a claim. The second is whether the complaint was timely filed.

## WHETHER PLAINTIFF'S COMPLAINT STATED A CLAIM

The defendant McIntire asserts that the trial court erred in denying his motion to dismiss the complaint for failure to state a claim. The essence of his argument is that ORS 250.045 unconstitutionally limits initiative rights guaranteed by Article IV, section 1, of the Oregon Constitution. Because we have ruled against the plaintiff as to his construction of the statute, the constitutional question does not arise in this case.

We turn then to the question whether the complaint was timely filed.

## TIMELINESS OF PLAINTIFF'S ACTION

Defendants Choban and Dennehy moved for summary judgment on the ground that the plaintiff's action "is not timely." This case was filed on July 13, 1990, 25 days after the Secretary of State announced that the initiative petition contained enough valid signatures to be on the November 1990 ballot. Defendants Choban and Dennehy assert that the case should have been filed within 5 days after the Secretary of State's decision to place the measure on the ballot. They rely on *State ex rel Bunn v. Roberts,* 302 Or 72, 726 P2d 925 (1986). *Bunn* is distinguishable.

In *Bunn,* the court considered what timeline applied to the Secretary of State's certification of a fiscal impact estimate for placement in the Voters' Pamphlet. ORS 250.125 requires that the fiscal impact estimate be certified by the appropriate officials no later than 90 days before the general election. The plaintiffs filed an action under ORS 246.910, 44 days after the officials certified the fiscal impact estimate and only 46 days before the election. The court expressed concern about adequate time for judicial review and, as in *Ellis v. Roberts,* 302 Or 6, 725 P2d 886 (1986), looked for an analogous statutory timeline. It concluded that "the closest analogy to the process set forth in ORS 250.125 is the explanatory statement process," which had a 5-day limit for seeking review. *State ex rel Bunn v. Roberts, supra,* 302 Or at 81. Like fiscal

impact estimates, explanatory statements must be filed with the Secretary of State at least 90 days before the election. ORS 251.235. Accordingly, the court imposed a 5-day timeline, which began to run on the 90th day before the election. 302 Or at 82.

In contrast, the action being challenged here — the Secretary of State's verification of signatures and certification of the initiative measure for the general election ballot — may occur at any time. Normally, the process raises less acute time pressures than the filing of a fiscal impact estimate or explanatory statement for placement in the Voters' Pamphlet. We do not believe that a 5-day limitation for timely challenge is necessary or appropriate.

ORS 246.910(1) provides:

"A person adversely affected by any act or failure to act by the Secretary of State or a county clerk under any election law, or by any order, rule, directive or instruction made by the Secretary of State or a county clerk under any election law, may appeal therefrom to the circuit court for the county in which the act or failure to act occurred or in which the order, rule, directive or instuction was made."

The statute does not state the time from which the appeal of the "order, rule, directive or instruction" must be taken. A challenge to the Secretary of State's action in this case is most appropriately governed by ORS 183.484(2). That statute requires that a petition for judicial review be filed in circuit court within 60 days of the order being challenged. Here, the plaintiff filed his petition in the Marion County Circuit Court 25 days after the Secretary of State verified the signatures, well within that 60-day limit. The action was timely filed.[5]

The judgment of the trial court is affirmed.

---

[5] We commend to the legislature the suggestion that it "consider enactment of further procedural statutes governing the review of elections decisions of the Secretary of State and others involved in the election process." *State ex rel Bunn v. Roberts,* 302 Or 72, 83-85, 726 P2d 925 (1986) (concurring opinion).

# APPENDIX

## ORS 250.045

(1989 amendments to subsection (5) are in bold type.)

"(1) Before circulating a petition to initiate or refer a state measure under section 1, Article IV, Oregon Constitution, the petitioner shall file with the Secretary of State a prospective petition. The prospective petition for a state measure to be initiated shall contain a statement of sponsorship signed by at least 25 electors. The signatures in the statement of sponsorship must be accompanied by a certificate of the county clerk of each county in which the electors who signed the statement reside, stating the number of signatures believed to be genuine. The Secretary of State shall date and time stamp the prospective petition and specify the form on which the petition shall be printed for circulation. The secretary shall retain the prospective petition.

"(2) The chief petitioner may amend the proposed initiated measure filed with the Secretary of State without filing another prospective petition, if:

"(a) The Attorney General certifies to the Secretary of State that the proposed amendment will not substantially change the substance of the measure; and

"(b) The deadline for submitting written comments on the draft title has not passed.

"(3) An initiative or referendum petition shall designate the name and residence address of not more than three persons as chief petitioners. The cover of a referendum petition shall contain the title described in ORS 250.065(1). If a petition seeking a different ballot title is not filed with the Supreme Court by the deadline for filing a petition under ORS 250.085, the cover of an initiative petition shall contain the ballot title described in ORS 250.067(2). However, if the Supreme Court has reviewed the ballot title, the cover of the initiative petition shall contain the title certified by the court.

"(4) The chief petitioners shall include with the prospective petition a statement declaring whether one or more persons will be paid money or other valuable consideration for obtaining signatures of electors on the initiative or referendum petition. After the prospective petition is filed, the chief petitioners shall notify the filing officer not later than the 10th day after any of the chief petitioners first has knowledge or should have had knowledge that:

"(a) Any person is being paid for obtaining signatures,

when the statement included with the prospective petition declared that no such person would be paid.

"(b) No person is being paid for obtaining signatures, when the statement included with the prospective petition declared that one or more such persons would be paid.

"(5) Each sheet of signatures on an initiative petition shall contain the caption of the ballot title **and the disclosure required by subsection (4) of this section.** Each sheet of signatures on a referendum petition shall contain the subject expressed in the title of the Act to be referred **and the disclosure required by subsection (4) of this section.** The Secretary of State by rule shall adopt a method of designation to distinguish signature sheets of referendum petitions containing the same subject reference and being circulated during the same period. Each sheet of signatures shall be attached to a full and correct copy of the measure to be initiated or referred. Each sheet of signatures shall contain only the signatures of electors of one county.

"(6) The reverse side of the cover of an initiative or referendum petition and both sides of a signature sheet may be used for obtaining signatures on an initiative or referendum petition. If both sides of a signature sheet are used, each side shall contain the information required on a signature sheet under subsection (5) of this section.

"(7) Not more than 20 signatures on the cover or on each side of each sheet of the initiative or referendum petition shall be counted. The cover of the initiative or referendum petition, if the cover is used to gather signatures, and each signature sheet of the initiative or referendum petition shall be verified on its face by the signed statement of the circulator that the individuals signed the cover or sheet in the presence of the circulator and that the circulator believes each individual is an elector. If both sides of a signature sheet are used for obtaining signatures, each side shall be verified by the circulator."