Argued and submitted September 28, the judgment of the circuit court reversed
October 4, 1990

Richard V. BASSIEN,
*Respondent,*

*v.*

Martin BUCHANAN,
George Choban, Thomas P. Dennehy
and Don McIntire,
*Respondents-Appellants,*

Barbara ROBERTS,
*Appellant-Respondent,*

*and*

Gregory KAFOURY,
Elaine Kelley, Lloyd K. Marbet,
William B. Early and Gene Pinniger,
*Intervenor-Appellants.*

(CC 90C-11831)

William JUNE,
*Respondent,*

*v.*

Barbara ROBERTS
and Dick Sohrt,
*Appellants,*

*and*

Gregory KAFOURY,
Elaine Kelley, Lloyd K. Marbet,
William B. Early and Gene Pinniger,
*Intervenor-Appellants.*

(CC 90C-11834)

Anne TALIAFERRO,
*Respondent,*

*v.*

Barbara ROBERTS
and Dick Sohrt,
*Appellants,*

*and*

Gregory KAFOURY,
Elaine Kelley, Lloyd K. Marbet,
William B. Early and Gene Pinniger,
*Intervenor-Appellants.*

(CC 90C-11836)

James M. WHITTY,
*Respondent,*

*v.*

Barbara ROBERTS
and Dick Sohrt,
*Appellants,*

*and*

Gregory Kafoury, Elaine Kelley, Lloyd K. Marbet,
William B. Early and Gene Pinniger,
*Intervenor-Appellants.*

(CC 90C-11837)
(CA A66663; SC S37509)
(Consolidated on Appeal)

798 P2d 667

Michael D. Reynolds, Assistant Attorney General, Salem,

argued the cause for appellants Barbara Roberts and Dick Sohrt. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Gregory Byrne, of Byrne & Barrow, Portland, argued the cause and filed a brief for appellants Martin Buchanan, George Choban, and Thomas P. Dennehy.

Greg Wasson, Salem, argued the cause and filed a brief for appellant Don McIntire.

Robert D. Durham, of Bennett & Durham, Portland, argued the cause and filed a brief for respondent Richard V. Bassien.

John R. Faust, Jr., of Schwabe, Williamson & Wyatt, Portland, argued the cause and filed a brief for respondent William June.

James N. Gardner, of Lindsay, Hart, Neil & Weigler, Portland, argued the cause for respondents Anne Taliaferro and James M. Whitty. With him on the brief was Rick T. Haselton, Portland.

Con P. Lynch, Salem, argued the cause and filed a brief for intervenor-appellants William B. Early and Gene Pinniger.

Linda K. Williams, Portland, argued the cause for intervenor-appellants Gregory Kafoury, Elaine Kelley, and Lloyd K. Marbet. With her on the brief was Daniel W. Meek, Portland.

Before Peterson, Chief Justice, and Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.*

PETERSON, C. J.

Fadeley, J., filed a concurring opinion.

_____

* Graber, J., did not participate in this decision.

## PETERSON, C. J.

ORS 250.125 requires designated state officials to prepare financial estimates respecting specified state measures, which estimates shall be "certified" and "filed" not later than the 90th day before the election at which the measures are to be voted upon. With respect to measures to be considered at the November 1990 general election, the designated officials failed timely to do so.[1] Some citizens filed actions in the Marion County Circuit Court to enjoin the Secretary of State from printing the fiscal impact estimates. Two Marion County Circuit Court judges granted that relief. We affirmed those judgments in *Dennehy v. Roberts,* 310 Or 394, 798 P2d 663 (1990).

After the Marion County judgments were entered, and before the appeals were taken in *Dennehy v. Roberts, supra,* the Secretary of State announced that, by reason of the judgments of the circuit court and the refusal of the Oregon Supreme Court to grant mandamus, she would publish no fiscal impact estimates for any measures. That decision was followed, on September 19 and 20, 1990, by a flurry of complaints filed in the Marion County Circuit Court in which the plaintiffs alleged that the absence of the fiscal impact estimates required by ORS 250.125 in effect invalidated the initiative measures, and required the entry of an order enjoining the Secretary of State from submitting Ballot Measures 4, 5, 6, 7 and 11 to the voters in the November 1990 election. The cases were decided by the trial judge on September 24, 1990. His ruling was:

> "IT IS ADJUDGED that Secretary of State Barbara Roberts has not complied with ORS 250.125 in submitting Ballot Measures 4, 5, 6, 7 and 11 to the voters at the November 6, 1990 General Election. She cannot submit those measures without estimates of the fiscal impact, as required by law. Previous judgments of this court enjoin the Secretary of State from printing fiscal impact estimates in the voters pamphlet and on the ballot because the estimates were not timely certified. ORS 250.125 is a valid statute which is not inconsistent with the power of initiative provided in Oregon Constitution, Article IV, Section 1.

---

[1] See the opinion in *Dennehy v. Roberts,* 310 Or 394, 798 P2d 663 (1990), for a summary of the facts involved.

"IT IS FURTHER ADJUDGED that the plaintiffs are entitled to certain injunctive relief. Accordingly, defendant Secretary of State Barbara Roberts and anyone acting under her authority are ordered and enjoined from counting any ballots during the 1990 General Election concerning Ballot Measures, 4, 5, 6, 7 and 11."

On September 27, 1990, the Secretary of State appealed to the Court of Appeals from the judgments. *See* ORS 246.910. These appeals have been consolidated and the certification of the appeals from the Court of Appeals to the Supreme Court was made and accepted on September 27, 1990. ORS 19.210; ORAP 10.1.

## ANALYSIS

Our opinion in *Dennehy v. Roberts, supra,* today affirms the correctness of the trial court judgments that the untimely certification and filing of the fiscal impact estimates require that the fiscal impact estimates not be included on the ballot or in the Voters' Pamphlet. The question before us in the instant cases is whether the legislature intended that the failure of the responsible public officials timely to certify and file the fiscal impact estimates required by ORS 250.125 — which, in turn, resulted in no fiscal impact estimates being printed on the ballots or in the Voters' Pamphlet — requires that there be no vote on the initiative measures. The answer to this question must be in the negative.

The analysis begins with the Constitution of Oregon. We quote from *Crumpton v. Roberts,* 310 Or 381, 387, 798 P2d 1100 (1990):

"The Constitution of Oregon expressly provides that '[t]he people reserve to themselves the initiative power.' Or Const, Art IV, § 1(2)(a). Section 1(4)(b) of Article IV provides:

"'Initiative and referendum measures shall be submitted to the people as provided in this section and by law not inconsistent therewith.'

"Pursuant to that express authority, the legislature has enacted ORS 250.045 and other statutes pertaining to the initiative process."

ORS 250.125 was enacted pursuant to the constitutional authority to enact laws "not inconsistent" with the constitution.

Our review of the legislative history reveals that the statute here involved was originally enacted in 1951, Or Laws 1951, ch 290, § 1, "to inform the people of the cost of a measure being voted upon." Minutes, Senate Tax Committee, March 22, 1951, 1:00 p.m. hearing on HB 489. The statute, ORS 250.125, is silent as to the effect if the responsible public officials fail timely to certify and file the fiscal impact measures. Nor does the legislative history aid us.

In *Crumpton v. Roberts, supra,* we stated:

> "In construing legislation that affects initiatives in process, it is reasonable to assume that the legislature intended that there be stability in the elections process and that the legislature did not intend to interfere with ongoing efforts to collect signatures on approved initiative petitions." 310 Or at 388.

ORS 250.125 was enacted to further, not fetter, the initiative process. It envisions that the responsible public officials timely would certify and file the fiscal impact estimate following the filing of the prospective petition, the issuance of the ballot title, the approval of the initiative petition, the circulation of the initiative petitions, the obtaining of the necessary signatures, and the counting and verification of the signatures by the election officials. At that point, the people have done what is required of them to place the measure on the ballot.

Were we to conclude that the absence of fiscal impact estimates occasioned by the failure of the responsible public officials timely to certify and file the fiscal impact estimates would result in the invalidation of all preceding efforts by the citizenry to put initiatives or referendums on the ballot, that would entirely thwart the goal that the constitution seeks to attain — the right of citizens "to propose laws and amendments to the Constitution and enact or reject them independently of the Legislative Assembly." Or Const, Art IV, § 1(2)(a). Invalidation very probably would thwart, as well, the legislative goals that other initiative statutes contained in ORS Chapter 250 seek to attain — the effectuation of that right. The goal's constitutional underpinnings cause us to believe that any contrary legislative intent must be expressed in the clearest terms. There is no such intent expressed in such (or any) terms in ORS 250.125. We have no doubt that

the intent of the legislature rather was one consistent with the constitutional end to be sought, *viz.*, that if the responsible public officials fail timely to certify and file the fiscal impact estimates, the election goes on without them. That is our decision.[2]

Accordingly, the judgment of the circuit court is reversed.

**FADELEY, J.,** concurring.

I totally concur in this opinion and with the much-to-be-desired result. The court holds that a failure to comply with the statutory deadline set forth in ORS 250.125 does not invalidate the initiative measures to which the failure relates. But, I would go further and state that the failure of government officials to meet a deadline in a way which crossed the t's and dotted the i's should not in any way affect the right of initiative or the legislature's efforts to inform the voters about the effects of an initiative. The statute central to this and the companion case (*Dennehy v. Roberts,* 310 Or 394, 798 P2d 663 (1990)) has but four sentences. ORS 250.125 provides that:

> "When a state measure involves expenditure of public money by the state, reduction of expenditure of public money by the state, reduction of state revenues or raising of funds by the state by imposing any tax or incurring any indebtedness, the Secretary of State, with the assistance of the State Treasurer, the Director of the Executive Department and the Director of the Department of Revenue, shall estimate the amount of expenditure, reduction of expenditure, reduction in state revenues, tax revenue or indebtedness and interest which will be required to meet the provisions of the measure if it is enacted. The estimate shall state the recurring annual amount involved or, if the measure does not involve a recurring annual amount, the total amount. The estimate shall be certified by the officials named in this section and, not later than the 90th day before the election at which the measure is to be voted upon, it shall be filed, with the data upon which it is based, with the Secretary of State. The estimate shall be printed in the voters' pamphlet and on the ballot unless the measure involves only administrative expenses not exceeding $50,000 per year." ORS 250.125.

---

[2] We do not reach the assertion of defendant McIntire that the legislature lacked authority to enact ORS 250.125. See discussion in *Crumpton v. Roberts,* 310 Or 381, 387, 798 P2d 1100 (1990).

Three of the sentences place absolute duties on state officials. They "shall estimate the amount of expenditure." The estimate "shall state the recurring annual amount," and the "estimate shall be printed in the voters' pamphlet and on the ballot." A fourth sentence, also in mandatory words, requires two things. The first is "shall be certified by the officials named in this section." The second is "not later than the 90th day before the election * * * shall be filed." The statute requires that "the Secretary of State, with the assistance of [others], shall estimate the amount * * * unless the measure involves only administrative expenses not exceeding $50,000 per year."

*State ex rel Anderson v. Paulus,* 283 Or 237, 583 P2d 534 (1978), and *State ex rel Bunn v. Roberts,* 302 Or 72, 726 P2d 925 (1986), relied on to prevent publication of the fiscal impact estimates, are not factually similar to this case. The reasoning of those cases does not extend to the situation in this case. Applying them here is not necessarily required.

In *Anderson* the voters received the contested information. The court used a strict deadline analysis to choose which of two different explanatory or informational statements should be printed. It did not decide that neither informational statement should be printed. After the *Anderson* decision, the Voters' Pamphlet still contained the information.

The statute applicable in *Anderson* gave all members of a committee to draft a ballot-measure explanation equal responsibility for the contents of that explanation. The statute governing estimates of a measure's fiscal impacts is different. It directs that the "Secretary of State * * * shall estimate the amount." The Secretary of State is to do so "with the assistance of" three other named state officials. Here the Secretary of State — through her attorney, the Attorney General — argues that when she accepted and filed the estimates they became the official, statutorily mandated estimates. They could not be changed except by a court. Thus, stability in the election process was assured. Judicial second-guessing of that executive decision may have created instability; the Secretary's decision did not.

All estimates were certified and signed before complaints were filed, on timeliness grounds, to prevent the fiscal

impact information from reaching the voters.[1] Over a month remained before the Voters' Pamphlet was to be printed. The statute does not say that this information is to be withheld from the voters if one or more officials are late signing the estimate. I do not believe the legislature intended that the statutory deadline, when not met by officials, be used to excuse the express mandate to print the measures' financial effects "in the voters' pamphlet and on the ballot."

Likewise, the *Bunn* court did not prevent information reaching the voters via the Voters' Pamphlet and ballot. Moreover, neither *Bunn* nor *Anderson* held that a failure of government officials to meet a deadline could be the basis for ruling a measure off the ballot. Nothing in the words of the statute, legislative intent, or our decided cases justifies throwing the baby out with its bathwater.

Once the people have lawfully proposed a vote on initiative or referendum measures under our constitution, no failure of government officials to agree or to meet a deadline should ever be construed to cancel the constitutional right to vote on them. Nor is punishing the people by withholding useful information an appropriate, or legislatively intended, remedy for laggardly official acts.

---

[1] The State Treasurer certified last, on August 15, that the estimates were those made by the group although he did not accede to some. The Secretary of State had approved and filed the estimates August 8. On August 15, printing of Voters' Pamphlets, ballots, and pro and con argument submission deadlines were still weeks away. At that point in time, first mailing of absentee ballots was over 40 days in the future. Radio and television broadcast timetables for the estimates, permitted by ORS 251.295, were seven weeks in the future.