Argued and submitted September 28, the judgments of the circuit court affirmed
October 4, 1990

Thomas P. DENNEHY
and Martin L. Buchanan,
*Respondents,*

*v.*

Barbara ROBERTS,
Anthony Meeker, Fred D. Miller,
Richard A. Munn and Dick Sohrt,
*Appellants,*

*and*

Mark NELSON,
Gregory Kafoury, Elaine Kelley
and Lloyd K. Marbet,
*Intervenor-Appellants.*

(CC 90C-11740; CA A66633; SC S37507 (Control))

Lon T. MABON,
*Respondent,*

*v.*

Barbara ROBERTS,
Anthony Meeker, Fred D. Miller
and Richard A. Munn,
*Appellants,*

*and*

Mark NELSON,
Gregory Kafoury, Elaine Kelley
and Lloyd K. Marbet,
*Intervenor-Appellants.*

(CC 90C-11584; CA A66632; SC S37508)
(Consolidated on Appeal)

798 P2d 663

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for appellants. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Gregory Byrne, of Byrne & Barrow, Portland, argued the cause and filed a brief for respondents Dennehy and Buchanan.

Henry S. Kane, Beaverton, and Melanie E. Mansell, Wilsonville, argued the cause for respondent Mabon. Ms. Mansell filed a brief on behalf of respondent Mabon.

James N. Gardner, of Lindsay, Hart, Neil & Weigler, Portland, argued the cause for intervenor-appellant Mark Nelson. With him on the brief was Rick T. Haselton, Portland.

Daniel W. Meek, Portland, argued the cause for intervenor-appellants Gregory Kafoury, Elaine Kelley, and Lloyd

K. Marbet. With him on the brief was Linda K. Williams, Portland.

Before Peterson, Chief Justice, and Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.*

PETERSON, C. J.

Fadeley, J., filed a dissenting opinion.

---

* Graber, J., did not participate in this decision.

**PETERSON, C. J.**

These consolidated cases come to us on an appeal certified from the Court of Appeals, challenging the judgments of the Marion County Circuit Court. Those judgments enjoin the Secretary of State from printing fiscal impact estimates for Ballot Measures 5, 8 and 11 on the November general election ballot or in the Voters' Pamphlet. We affirm the circuit court judgments.

■   ORS 250.125 provides:

"When a state measure involves expenditure of public money by the state, reduction of expenditure of public money by the state, reduction of state revenues or raising of funds by the state by imposing any tax or incurring any indebtedness, the Secretary of State, with the assistance of the State Treasurer, the Director of the Executive Department and the Director of the Department of Revenue, shall estimate the amount of expenditure, reduction of expenditure, reduction in state revenues, tax revenue or indebtedness and interest which will be required to meet the provisions of the measure if it is enacted. The estimate shall state the recurring annual amount involved or, if the measure does not involve a recurring annual amount, the total amount. The estimate shall be certified by the officials named in this section and, not later than the 90th day before the election at which the measure is to be voted upon, it shall be filed, with the data upon which it is based, with the Secretary of State. The estimate shall be printed in the voters' pamphlet and on the ballot unless the measure involves only administrative expenses not exceeding $50,000 per year."

Documents purporting to be fiscal impact estimates for Ballot Measures 5, 8 and 11 were placed on file with the Secretary of State's office on August 8, 1990, the 90th day before the November general election. Written certifications by the statutorily designated responsible public officials were not filed with the Secretary of State until August 13, 1990, and August 15, 1990.

The plaintiffs filed two actions in Marion County Circuit Court, under ORS 246.910, alleging the failure of the responsible public officials to certify the fiscal impact estimates in a timely manner and asking that the statements not be printed. The circuit court entered a judgment for plaintiffs in each action and ordered that the fiscal impact estimates not

be printed in the Voters' Pamphlet or on the ballot because of the public officials' failure to comply with the express provisions of ORS 250.125.

The Secretary of State petitioned this court for a writ of mandamus seeking to vacate the circuit court judgment in the case involving Ballot Measures 5 and 11. This court denied the petition on September 13, 1990.

The Secretary of State then filed appeals in the Court of Appeals from both judgments. *See* ORS 246.910. Those appeals have been consolidated and the certification of the appeals from the Court of Appeals to the Supreme Court was made and accepted on September 26, 1990. ORS 19.210; ORAP 10.10.

## ANALYSIS

This court recently stated that ORS 250.125 requires certification before filing an explanatory statement. *State ex rel Bunn v. Roberts,* 302 Or 72, 78, 726 P2d 925 (1986) (interpreting an earlier version of ORS 250.125, which was identical to the present statute with respect to the point in issue here). Additionally, this court has held that a statutory requirement that something be "certified" ordinarily means a written certification, and that the requirement of a writing is especially important in the context of election laws, where certainty and clarity are especially important. *State ex rel Anderson v. Paulus,* 283 Or 241, 245-46, 583 P2d 531 (1978) (under a similar election statute, the Secretary of State properly refused to accept an explanatory statement not timely signed by those responsible for certifying it).

■■ This court's interpretation of a statute becomes a part of that statute as if expressed in the statute itself. *State v. Clevenger,* 297 Or 234, 244, 683 P2d 1360 (1984). Since this court's decision in *State ex rel Anderson v. Paulus, supra,* the legislature has not amended the term "certified" in ORS 250.125 to permit something other than written certification. Since *State ex rel Bunn v. Roberts, supra,* the legislature has not amended ORS 250.125 to permit certification *after* filing. Accordingly, the failure of the responsible public officials to submit written certification of the fiscal impact estimates on or before August 8, 1990, the statutory deadline for filing,

violated ORS 250.125. We turn, then, to consider the appropriate remedy for this statutory violation. The statutes and the legislative history are silent on the question.

In *State ex rel Anderson v. Paulus, supra,* the responsible five-member citizen committee had prepared but not signed an explanatory statement for a ballot measure initiative. The Secretary of State refused to accept the committee's explanatory statement and referred the task to Legislative Counsel Committee, which was the statutorily prescribed backup for drafting explanatory statements in such circumstances. 283 Or at 243-44.

The question before the court was which explanatory statement the Secretary of State should print in the Voters' Pamphlet, the citizen committee's untimely statement or that of the Legislative Counsel Committee. Unlike the present case, the court in *Anderson* did not need to confront a consequence that pertinent voter information would not be printed on the ballot or in the Voters' Pamphlet.

In *Anderson,* as in this case, the delay between the statutory deadline and the actual late certification of the statement was brief. This court recognized that.

"The defect did not produce either any actual uncertainty about the committee's position or the need for any substantial delay in the preparation of written materials for the Voters' Pamphlet." 283 Or at 247.

Nonetheless, the court held:

"If the Secretary [of State] or other officer were required to await the possible cure, after the statutory deadline, of defects which are not merely insubstantial matters of form, the entire election preparation timetable could be undermined.

"* * * The defect in this case — the lack of certification — was substantial and it may not be cured by certifications submitted after the filing deadline." 283 Or at 248. (Footnote omitted.)

In recognizing that election law timetables ordinarily are mandatory, the *Anderson* court understood the importance of clarity and certainty in the election process, which ranges from the detailed sequence of events that lead to an initiative measure going before the voters to the procedures for "filing" of election documents. *See* ORS 246.021. The

*Bunn* court expressly recognized the special exigencies that accompany any delay in the process related specifically to the fiscal impact estimates, requiring that a challenge to the certified estimates be brought within five days after the statutory deadline for filing the certified estimate. The court stated that a longer deadline for challenges (referring to a proposed 60-day period) would leave the courts "with no time to narrow and clarify the issues in the judicial process while still enabling the Secretary of State to fulfill her statutory responsibilities to provide for an orderly election." *State ex rel Bunn v. Roberts, supra,* 302 Or at 81.

■ In this case, the circuit court correctly determined that the Secretary of State should be enjoined from printing the fiscal impact estimates on the ballot or in the Voters' Pamphlet. The Secretary of State does not have the statutory authority, by accepting delayed certifications, to shave one week off the final 90 days for court challenges to and public debate on a certified fiscal impact estimate.

Time pressures of initiative election deadlines become ever more acute as the initiative process progresses and the potential effects of even brief delay become magnified, as this year's chaotic events amply demonstrate. The electorate is entitled to stability and certainty in the electoral process; this is best obtained by statutory compliance. *See Crumpton v. Roberts,* 310 Or 381, 798 P2d 1100 (1990) ("[i]n construing legislation that affects initiatives in process, it is reasonable to assume that the legislature intended that there be stability in the elections process").

This court is acting in furtherance of what it perceives to be a legislative objective, certainty and clarity in the election process. Service of that objective goes beyond whether fiscal impact estimates will be printed for initiatives to be voted upon in November 1990. The principle of statutory construction that we follow in this case helps to ensure that the electorate can proceed with certainty in elections, and election officials can act with confidence in their role as facilitators of the statutory election process. It is axiomatic that we are a government of laws, not of people; we must not submit to the temptation to let the perceived exigencies of the moment cloud our judgment in application of the law.

The judgments of the circuit court are affirmed.

**FADELEY, J.,** dissenting.

I dissent for the reasons stated in the concurring opinion in *Bassien v. Buchanan,* 310 Or 402, 798 P2d 667 (1990).