Argued and submitted September 3, petition for judicial review of ballot measure
financial impact estimate dismissed September 11, 1992

Lloyd K. MARBET,
Kellie Petersen and Gregory Kafoury,
*Petitioners,*

*v.*

Phil KEISLING,
Secretary of State;
Tony Meeker, State Treasurer;
Fred D. Miller, Director of Executive
Department; and Richard A. Munn,
*Respondents.*

(SC S39523)

838 P2d 580

Daniel Meek, Portland, argued the cause and filed the
petition for petitioners.

Robert B. Rocklin, Assistant Attorney General, Salem, argued the cause and filed the memorandum for respondents. With him on the memorandum were Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, and Janet A. Metcalf, Assistant Attorney General, Salem.

Before Carson, Chief Justice, and Peterson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

GILLETTE, J.

Van Hoomissen, J., concurred and filed an opinion in which Fadeley and Unis, JJ., joined.

## GILLETTE, J.

Petitioners, who are the chief sponsors of 1992 Ballot Measure 5 (a measure that would close the Trojan nuclear power plant at Rainier, Oregon), brought this original proceeding in this court pursuant to ORS 250.131, set out *post*. Petitioners challenge the estimate of financial impact of the measure that was prepared by respondents, who collectively constitute the statutory committee charged with the task of preparing estimates of financial impact for statewide ballot measures.[1] For the reasons that follow, we hold that petitioners' challenges to the financial impact estimate are not of a kind that may be addressed by this court in a proceeding under ORS 250.131. Accordingly, we dismiss the petition.

### PREPARATION AND REVIEW
### OF FINANCIAL IMPACT ESTIMATES

The following is a summary of the procedure by which a financial impact estimate for a ballot measure is prepared:

(1)   The Secretary of State, the State Treasurer, the Director of the Executive Department, and the Director of the Department of Revenue are designated a

---

[1] ORS 250.125 provides:

"(1) When a state measure involves expenditure of public money by the state, reduction of expenditure of public money by the state, reduction of state revenues or raising of funds by the state by imposing any tax or incurring any indebtedness, the Secretary of State, the State Treasurer, the Director of the Executive Department and the Director of the Department of Revenue shall estimate the amount of direct expenditure, direct reduction of expenditure, direct reduction in state revenues, direct tax revenue or indebtedness and interest which will be required to meet the provisions of the measure if it is enacted. The estimate shall state the recurring annual amount involved or, if the measure does not involve a recurring annual amount, the total amount.

"(2) The officials named in subsection (1) of this section shall also estimate the aggregate amount of direct expenditure, direct reduction of expenditure, direct reduction in revenues, direct tax revenue or indebtedness and interest which will be required by all cities, counties and districts to meet the provisions of the measure.

"(3) The estimates shall be printed in the voters' pamphlet and on the ballot unless the measure involves only state agency expenses not exceeding $100,000 per year.

"(4) If the officials named in subsection (1) of this section determine that the measure, if it is enacted, will have no financial effect except as described in subsection (3) of this section, the words 'no financial effect' shall be printed in the voters' pamphlet and on the ballot."

committee to make certain estimates of the financial impact of a ballot measure. ORS 250.125(1) and (2).

(2) The estimates prepared by the committee must be filed with the Secretary of State at least 100 days before the election at which the ballot measure is to be voted on. ORS 250.127(1).

(3) After "reasonable statewide notice," the Secretary of State must hold a hearing (within a designated time period) to receive suggested changes to the estimates made by the committee. ORS 250.127(2).

(4) The four designated officials (*i.e.*, the committee) "shall consider" any suggestions submitted and "may" file revised estimates within a further designated time period. ORS 250.127(3).

(5) The estimates must be approved by at least three of the four designated officials. The Secretary of State must certify the estimates at least 90 days before the election. All estimates must be made available to the public. ORS 250.127(4).

(6) Meetings of the four designated officials must be open to the public. ORS 250.127(6).

(7) The estimates must be printed on the ballot and in the voters' pamphlet unless the measure involves only state agency expenses not exceeding $100,000 per year. ORS 250.125(3).

■ Direct judicial review of the foregoing process is very limited and is confined to this court. ORS 250.131(1) and (2) provide:

"(1) *Any person alleging that an estimate required under ORS 250.125 was prepared, filed or certified in violation of the procedures specified in ORS 250.125 or 250.127* may petition the Supreme Court seeking that the required procedures be followed and stating the reasons the estimate filed with the court does not satisfy the required procedures. *No petition shall be allowed concerning the amount of the estimate or regarding whether an estimate should be prepared.*

"(2) If the petition is filed not later than the 85th day before the election at which the measure is to be voted upon,

the court shall review the procedures under which the estimate was prepared, filed and certified, hear arguments and determine whether the procedures required under ORS 250.125 and 250.127 were satisfied. *The review by the Supreme Court shall be conducted expeditiously to insure the orderly and timely conduct of the election at which the measure is to be submitted to the electors.*"

(Emphasis added.) If this court determines that "the procedures" were not satisfied, we are directed to order the preparation of a second estimate by the same designated officials, who are required to act under a very restricted time line. If a second estimate is prepared by those officials, it is not subject to any judicial review at all. ORS 250.131(3)(c).

Under ORS 250.131(2), we are authorized to examine only whether the "procedures under which the estimate was prepared, filed and certified" were satisfied. What are those "procedures"? Assuming (without deciding) that the term is ambiguous, the parties have not pointed to any legislative history that more fully explains what the legislature had in mind by use of the word "procedures," and we know of none. Absent other information, we give the word its ordinary meaning, *viz.*, the series of steps by which the designated officials are directed to carry out their function.

The statute's specification of "procedural," as opposed to plenary, review, together with the statute's overall emphasis on an expeditious estimate-preparation and review process, persuades us that the legislature did not intend the scope of this court's review under ORS 250.125 to include any inquiry into the *substance* of a financial impact estimate. We recognize that this limited reading of the scope of our review under the statute necessarily means that an estimate may inaccurately describe the financial impact of a measure but be beyond the authority of this court to correct pursuant to ORS 250.131, so long as that statement was prepared in accordance with the procedures set out in the statutes. But choosing between speed and a more extensive form of judicial review was a policy choice for the legislature, not this court, to make.

Any argument for a contrary reading of ORS 250.131 necessarily assumes that the "procedures" that the committee must follow (and that this court may review) include the

committee's actual consideration of and issuance of estimates concerning each of the financial expenditure and receipt items enumerated in ORS 250.125, set out *ante* at note 1. Thus, any failure to discuss accurately any of those items could be called a "procedural" error. But examination of the statute itself shows that this cannot be what the legislature intended.

ORS 250.125(3) directs that estimates of financial impact be printed *unless* the estimates involve "only state agency expenses not exceeding $100,000." Under the circumstances discussed in subsection (3) of the statute, the words "no financial effect" are to appear in the voters' pamphlet. ORS 250.125(4). Subsections (3) and (4) show that the legislature knew how to direct that a particular procedure be followed in particular circumstances. The lack of any similar legislative direction in circumstances relating to the directness of an expenditure or a tax, or where the committee determines that some but not all of the items enumerated in ORS 250.125(1) will be affected by the measure, demonstrates that the legislature required no particular procedure concerning the way in which the committee reached its conclusions on those subjects.

We turn to the petition filed in this case.

### THE PETITION

Far from contending that respondents failed to issue a proposed financial impact estimate, failed to hold a hearing, failed to consider evidence taken at the hearing, or failed to issue a revised financial impact estimate after the hearing, petitioners essentially admit or affirmatively aver that all of the foregoing statutory tasks were performed.

From petitioners' petition, it appears that respondents first proposed the following financial impact estimate:

> "No financial impact on state government is anticipated. In 1995-96, Columbia County property tax revenues will be reduced by $1.6 million for schools and $76,000 for other taxing districts."

Notice then was given and a public hearing was held. After that hearing, respondents issued the following revised estimate:

"In 1995-96, local schools property tax revenues will be reduced by $1.6 million and other taxing districts property tax revenues will be reduced by $76,000. In 1995-96, the State is obligated to replace property tax revenues lost to the public school system."

Petitioners thereafter timely filed the present petition for review in this court. We set out petitioners' specific contentions, and our analysis of each contention, below:

(1) *The estimate is invalid because it is based on the premise that the state will be required to replace property tax revenues lost to the public school system by virtue of the fact that there will be a diminution in Trojan's property value if the measure is enacted.*

That contention is not about procedure, *i.e.*, the way in which the financial impact estimate was prepared. Instead, it is an objection to the *substance, i.e.*, the *amount* of the estimate — a subject that this court specifically is forbidden to review under ORS 250.131(1) ("no petition shall be allowed concerning the amount of the estimate").

(2) *Respondents' premise concerning a requirement that the state replace any school tax revenues lost was not mentioned in either the draft estimate or at the public hearing.*

That also is an attack on the correctness of the estimate and, as such, is outside the scope of review granted to this court.

(3) *Respondents' estimate of "direct" costs and reduction of revenue is "hypothetical."*

Again, that is an attack on the correctness of the estimate. However, petitioners have, both by way of a memorandum of supplemental authorities and in oral argument, now expanded on this theory by charging that the estimate certified by the committee deals with "indirect" expenditures, reductions in revenue, and the like, while the legislature intended that only "direct" expenditures, reductions, and the like would be included in the estimate.

Petitioners point to certain legislative history that appears to justify their contention that the present estimate focuses on issues that the legislature did not consider to be

"direct." Petitioners then attempt to turn this apparent deficiency into a procedural error by asserting that including "indirect" expenditures, etc., is error reviewable by this court because the proper "procedure" was to include only "direct" expenditures, etc. We reject this attempt by petitioners to turn the act of choosing a particular substantive estimate into a "procedure." It is inescapable that this objection is, at bottom, an objection to what the committee chose to include in the estimate. However couched, that is an objection to the amount of the estimate and to the committee's interpretation of a substantive provision of the law (*i.e.*, what is a "direct" cost).

(4) *There was no evidence in the record made at the public hearing that the effect of the measure would be to reduce the value of the Trojan plant to zero, so that no property taxes could be collected on it.*

Again, this is a direct challenge to the correctness of the estimate.

(5) *Respondents should also have considered the increase in local property tax assessments likely to occur if Trojan closed.*

That is a claim that, had the committee more fully evaluated changes in local property taxes likely to occur if Trojan were closed, the committee's tax receipts reduction estimate would have been lower. This is a direct challenge to the amount of the estimate.

(6) *Respondents should have considered other savings that local governments would realize as a result of closing Trojan.*

That is a claim that, if respondents had taken into account other matters that petitioners believe should have been considered, the estimate of financial impact would have been lower. That is a direct challenge to the amount of the estimate.

(7) *Respondents should have taken into consideration the increase in property taxes collectible as a result of the increase in value of other electric-generating facilities in the state after Trojan was closed.*

That is yet another version of petitioners' claim that, if respondents had taken everything pertinent into consideration, the estimate would have been different. Again, that is a direct challenge to the amount of the estimate.

(8) *Respondents' estimate does not reflect the "aggregate" amounts that will be required by "all cities, counties and districts to meet the provisions of the measure," as required by ORS 250.125(2).*

That is yet another challenge to the correctness of the amount of the estimate.

In summary, none of petitioners' theories for invalidating the financial impact estimate certified by respondents is a theory that this court is entitled to address under our narrow scope of review. ORS 250.131(1) states that "[n]o petition shall be allowed" concerning the matters that petitioners here attempt to raise. If no petition to that effect is to be "allowed," and this is such a petition, it follows that we should dismiss the petition.

We discuss one other matter briefly, because it bears on the way that petitions like the present one will be dealt with by this court in the future. As already indicated, the judicial review statute in question, ORS 250.131(2), states that, when a timely petition is filed, this court "shall review the procedures under which the estimate was prepared, filed and certified, *hear arguments* and determine [whether the requisite procedures were followed]." (Emphasis added.) However, the requirement that this court "hear argument" applies only to *proper* petitions under ORS 250.131(1). As we have explained, the present petition is not such a petition. Nevertheless, this court scheduled and heard oral argument concerning the petition because we could not be sure whether the petition was proper and because this was a case of first impression under the statute. We now note that, in the future, petitions like the present one will be scrutinized when they are filed and, if they prove not to be directed at procedural errors that this court is authorized to act upon, they will be dismissed without oral argument.

Petition for judicial review of ballot measure financial impact estimate dismissed.

**VAN HOOMISSEN, J.,** concurring.

Petitioners argue generally that respondents "violated" ORS 250.125(1) and (2). I agree with the majority that, under this court's narrow scope of review, none of petitioners' theories for invalidating the financial impact estimate certified by respondents is a theory that this court may address and, therefore, that we should dismiss their petition. ORS 250.131(1).[1] I write separately to articulate my concerns about this court's scope of review.

As we have construed the relevant statutes, the role of this court in the statutory scheme is so limited as to be virtually meaningless. As a practical matter, we review solely to determine whether respondents have jumped through the prescribed procedural hoops. If so, the petition must be dismissed. If not, we only may send the estimate back and order the preparation of a second estimate. ORS 250.131 (3)(c). In that event, after correcting any procedural deficiency, respondents may, if they wish, certify the *same* estimate. If, on remand, respondents fail to jump through the prescribed procedural hoops, there is nothing this court (or anybody else for that matter) may do about it. ORS 250.131(3)(c);[2] 250.127(7).[3]

---

[1] ORS 250.131(1) provides:

"Any person alleging that an estimate required under ORS 250.125 was prepared, filed or certified in violation of the procedures specified in ORS 250.125 or 250.127 may petition the Supreme Court seeking that the *required procedures* be followed and stating the reasons the estimate filed with the court does not satisfy the *required procedures. No petition shall be allowed concerning the amount of the estimate* or regarding whether an estimate should be prepared." (Emphasis added.)

[2] ORS 250.131(3)(c) provides:

"If the court determines that the procedures described in ORS 250.125 and 250.127 were not satisfied, the court shall order the preparation of a second estimate, to be prepared, filed and certified as provided in ORS 250.125 and 250.127 except that:

"* * * * *

"(c) An estimate shall be certified not later than seven days after the decision of the court. The procedures under which the second estimate is filed and certified may not be appealed."

[3] ORS 250.127(7) provides:

"A failure to prepare, file or certify estimates under ORS 250.125, this section or ORS 250.131 shall not prevent the inclusion of the measure in the voters' pamphlet or placement of the measure on the ballot."

I have no quarrel with the legislature's apparent decision to let respondents make the financial impact estimate without substantive review as to the correctness of the estimate by anyone. That is a constitutionally permissible policy choice for the legislature. For that matter, the legislature, if it had chosen to, could have expressly provided that there be *no* judicial review of the estimate. Moreover, the legislature, in its wisdom, could repeal the entire statutory scheme.

My concern is that this court's role in the statutory scheme appears to be mere window dressing. I expect that, pursuant to their mandate, respondents will "estimate," "prepare and file * * * estimates," "consider" suggestions submitted at the Secretary of State's hearing, conduct business in public, and in every other respect do their duty under the statutes. For that reason, I believe that a complaint under ORS 250.131 will rarely involve an alleged procedural violation. Rather, as is the case here, a complaint almost always will involve the amount of the estimate, something this court is not statutorily authorized to review. ORS 250.131(1). Even if we were to find that an estimate is incorrect, we have no authority to change it or to direct that respondents change it.

Accordingly, if a complaint is about substance, not procedure, this will not entertain it. Thus, we will not review: whether an estimate should be prepared; the amount of an estimate; whether an estimate is correct or incorrect; whether an estimate correctly reflects the financial impact to cities, counties, and districts; whether the amounts included are direct or indirect; whether respondents must make their decision based on a record; whether there is evidence to support an estimate; whether respondents articulated a rationale (correct or incorrect) for an estimate; whether an estimate is in conflict with uncontradicted evidence submitted to respondents; whether an estimate is based on a factually or legally faulty premise; whether respondents acted arbitrarily or capriciously; whether an estimate is contrary to evidence at the hearing; or whether an estimate is based on evidence not addressed at the hearing or in public.

In the final analysis, except for procedural regularity, these statutes grant this court no power to act on a petition filed pursuant to ORS 250.131, even if we were to find

in some other case malevolent, recalcitrant, or unenlightened officials. Thus, this court serves no meaningful role in protecting the public's interest in the integrity of the financial impact estimate. If that is what the legislature intended, then it should repeal ORS 250.131 and end the charade of judicial review, which yields only a harvest of petitions that will be routinely and summarily dismissed by this court.

Fadeley, J., and Unis, J., join in this opinion.