Submitted September 8, petition for writ of mandamus denied September 11, 1992

STATE ex rel Lloyd K. MARBET,
Kellie Petersen and Gregory Kafoury,
*Petitioners,*

*v.*

Phil KEISLING,
Secretary of State;
Tony Meeker, State Treasurer;
Fred D. Miller, Director of Executive
Department; and Richard A. Munn,
Director of Department of Revenue,
*Respondents.*

(SC S39575)

838 P2d 585

Daniel Meek, Portland, filed the petition for petitioners.

Janet A. Metcalf, Assistant Attorney General, Salem, filed the memorandum for respondents. With her on the memorandum were Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, and Robert B. Rocklin, Assistant Attorney General, Salem.

Before Carson, Chief Justice, and Peterson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

GILLETTE, J.

## GILLETTE, J.

This is an original mandamus proceeding. Petitioners, the chief sponsors of 1992 Ballot Measure 5 (a measure that would require closure of the Trojan nuclear power plant at Rainier, Oregon), have filed a petition asking this court for one of two alternative forms of relief:

(1) A peremptory writ of mandamus directing the respondent Secretary of State to

"(1) comply with the mandatory requirements limiting the statements authorized to appear on official election ballots [ORS 254.135(a) - (d)] and in the Voters Pamphlet [ORS 252.185] describing the estimate of the financial impact of Ballot Measure 5 of 1992 (Trojan);

"(2) oversee and direct under ORS 246.110 that only materials which are substantively lawful appear on state-wide ballots and all editions of the Voters Pamphlet prepared for the November 3, 1992, election; and

"(3) reject and not publish on the election ballot or in the Voters Pamphlet all materials unauthorized by law."

(Bracketed material in original.)

(2) An alternative writ of mandamus directing respondents Secretary of State, State Treasurer, Director of the Department of Revenue, and Director of the Executive Department (the ballot measure financial impact estimate committee established by ORS 250.125) to prepare a financial impact statement estimating the "direct" costs of implementing 1992 Ballot Measure 5, as petitioners maintain that those respondents are required but have failed to do under ORS 250.125(1) and (2), or to show cause why they have not done so.

Petitioners are asking this court to exercise its original mandamus jurisdiction to direct a form of relief that this court today has held is unavailable to these petitioners on direct judicial review of a certified ballot measure financial impact estimate. *See Marbet v. Keisling*, 314 Or 223, 838 P2d 580 (1992) (holding that the petitioners' challenges to the financial impact estimate certified by respondents were addressed to the substance of the estimate, not to the procedures by which the estimate was reached, and therefore the challenges were beyond the scope of judicial review available

from this court under ORS 250.131). We decline to exercise our original mandamus jurisdiction in this case for two reasons.

■ First, and despite petitioners' claims to the contrary, this petition for mandamus was not timely filed. The financial impact estimate to which petitioners object was certified by respondents on August 5, 1992. Under ORS 250.131(2), a petition for judicial review of the certified estimate had to be filed "not later than the 85th day before the election at which the measure is to be voted upon" — in this case, by August 10, 1992. This court long has held that, where parties seek mandamus relief, their petitions in order to be timely must be filed in time to meet any analogous statutory deadline. *See, e.g., State ex rel Fidanque v. Paulus*, 297 Or 711, 717-18, 688 P2d 1303 (1984) (illustrating principle). The present petition was not filed until August 28, 1992. It was not timely.

■ Second, and even if the petition were timely, we nonetheless would decline to exercise our mandamus power. The legislature has provided a form of judicial review of ballot measure financial impact estimates in ORS 250.125 to 250.135. Petitioners, in fact, have availed themselves of this avenue of judicial review. *Marbet v. Keisling, supra*. That form of review has proved to be far too limited to satisfy petitioners, but it appears from both its text and context that the legislature intended that only a limited statutory review be available under ORS 250.131, and then only for procedural errors. 314 Or at 227-28.

Our decision not to invoke this court's discretionary constitutional authority under Article VII (amended), section 2, of the Oregon Constitution ("the supreme court may, in its discretion, take original jurisdiction in mandamus") is informed by the legislative policy choice just described. The limited judicial review policy established by the legislature for financial impact estimates would be complicated significantly by a contrary decision on our part, resulting in the extension of a process that of necessity is already extremely time-sensitive. Without suggesting that we never would exercise our discretionary constitutional mandamus jurisdiction in cases of this kind, we decline to exercise that jurisdiction where, as here, the essence of petitioners' complaints about

the financial impact estimate mirrors the statutory arguments that petitioners made unsuccessfully in *Marbet v. Keisling, supra*.[1]

Petition for writ of mandamus denied.

---

[1] Petitioners have also alluded to various constitutional provisions in their petition, but they have not made any principled arguments under those provisions that cause us to believe that our intervention in the financial impact estimate process is required at this very late date.