Filed:  September 20, 2012

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Plaintiff-Adverse Party,

v.

TYLER ANTHONY BLOK,

Defendant-Relator.

(CC C112414CR; SC S059925)

En Banc

Original proceeding in mandamus.*

Argued and submitted May 23, 2012.

Celia Howes, Hoevet, Boise & Olson, P.C., Portland, argued the cause and filed the brief for Defendant-Relator.  With her on the brief was Ronald H. Hoevet.

Jeremy C. Rice, Assistant Attorney General, Salem, argued the cause and filed the brief for Plaintiff-Adverse Party.  With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

BALMER, C. J.

The alternative writ of mandamus is dismissed.

* Washington County Circuit Court, Janelle F. Wipper, Judge.

BALMER, C. J.

In this original mandamus proceeding, relator, a criminal defendant who was released from custody pursuant to a security release agreement, seeks to compel the judge who set the terms of the agreement to modify a condition that forbids him from having contact with his father. In his mandamus petition, and again in his brief on the merits in this court, defendant made two legal arguments: that the trial court had no statutory authority to impose the condition and that, if the relevant statute permitted the condition, it was unconstitutional. At oral argument, however, relator conceded that a "no contact with witnesses" condition may be lawfully imposed in some circumstances and argued, instead, that the condition was improper in this case because it was not supported by evidence in the record. Because relator's argument to this court is not the argument that he raised in his mandamus petition, it does not present the legal question posed by our issuance of the alternative writ. Accordingly, we exercise our discretion to dismiss the alternative writ of mandamus that we previously issued.

Relator, who is 24 years old, was charged by indictment with several sexual offenses, all of which related to conduct that occurred between 2001 and 2005, when relator was a young teenager. All the offenses involved relator's younger cousin.

Shortly after relator was arraigned on the charges, the trial court held a hearing to consider, among other things, whether to release relator pending trial and, if

1

so, with what conditions.[1]  Because one of the charges against relator was a Measure 11[2] offense, any pretrial release was governed by ORS 135.240(5).  That statute provides, in part:

> "(a) Notwithstanding any other provision of law, the court shall set a security amount of not less than $50,000 for a defendant charged with an offense listed in ORS 137.700 or 137.707[, *i.e.*, a Measure 11 offense] * * * and may not release the defendant on any form of release other than a security release[3] * * *.

> "* * * * *

> "(b) In addition to the security amount described in paragraph (a) of this subsection, the court *may impose any supervisory conditions deemed necessary for the protection of the victim and the community*."

(Emphasis added.)

Before the hearing, the court had received a report prepared by the circuit court's release assistance officer that recommended that the court impose a number of "boilerplate" conditions on relator's release.  One of those conditions was that relator have no contact with persons who would be witnesses at his trial.  According to the parties, the "no contact with witnesses" condition is a standard feature of security release

---

[1]  The hearing was scheduled on relator's "Motion to Reduce Bail."

[2]  Measure 11 offenses are those that, under a ballot measure approved by Oregon voters in 1994, carry lengthy mandatory prison sentences.  Ballot Measure 11 (1994).  The Measure now is codified at ORS 137.700 and ORS 137.707.

[3]  A "security release" is "a release conditioned on a promise to appear in court at all appropriate times which is secured by cash, stocks, bonds or real property." ORS 135.230(12).  Depending on the charges, a defendant may also be released on his or her promise to appear as required, with or without additional conditions.  ORS 135.250, ORS 135.260.

2

agreements in Washington County when a defendant is charged with a Measure 11 offense.

At the hearing, relator argued that some of the standard release agreement conditions were unnecessary, given the "unique" circumstances of the case -- that the offenses had occurred many years before, when relator was a minor; that there was no evidence that relator had engaged in any misbehavior since the time of those offenses; and that relator had shown himself in recent years to be a responsible person, "a scholar and an athlete." Relator specifically objected to applying the "no contact with witnesses" condition to relator's contact with his own immediate family (he expressly accepted the "no contact" condition insofar as it prohibited contact with the victim and *her* family). In support of his various arguments (which addressed the amount of bail and a condition that relator be supervised on a 24-hour basis, as well as the "no contact" condition), relator offered (1) the testimony of his mother, primarily concerning relator's parents' financial resources, and (2) a number of exhibits, including relator's academic records, letters of recommendation written by relator's high school guidance counselor, and a declaration by the victim's father (who also was relator's uncle) that he supported relator's request for a reduction of bail and that he did not believe that relator posed a risk to his daughter or the community.

The prosecutor responded to relator's arguments by describing to the court the particulars of the alleged crimes, including the fact that they occurred when the victim was between seven and ten years old. He then described an incident in which relator supposedly apologized to the victim:

3

"The victim's father and defendant's father confronted defendant some time later at a family gathering. The defendant apologized to the victim for treating her as he did and the family thought this was over at that point."

The prosecutor explained that, although the family apparently knew about the alleged abuse at the time of the apology, they did not report it, and the police had learned of it through a mandatory reporter. The prosecutor ended by suggesting that the declaration by the victim's father that relator had submitted to the court reflected the entire family's inappropriate view that a resolution within the family was all that mattered:

"The family members have known about this for some time and it is no surprise to me that the victim's father is declaring in the exhibit presented by counsel that he doesn't think that defendant is a risk because, as far as the family is concerned, defendant apologized and was forgiven."

Relator's counsel responded to the prosecutor's statements by noting that, although he had not had access to any discovery in the case, he had talked to the family about the apology that the prosecutor had described, and the family viewed the apology as simply "to buy peace within the family" and not as an admission of particular acts. Relator's counsel added that he "did not want the court to have the impression that two years ago the family all got together and made an admission that [relator] had engaged in this conduct."

The judge thereafter asked the prosecutor if he intended to call any member of relator's immediate family as a witness and was told that relator's father would be called. The judge thereafter announced that among the conditions that she would impose on relator's release under a security release agreement was a condition that relator have no contact with the victim, her immediate family, or any witness -- including,

4

specifically, relator's father. Relator immediately requested to be heard on the inclusion of his father in the "no contact" list, but the judge denied the request. A security release agreement was drafted that conformed to the judge's ruling, and relator signed it and was released from custody.

The next day, relator moved to modify the conditions of his release to allow him to have contact with his father and asked for a hearing on the matter. Relator attached an affidavit from his father stating that he (father) and relator needed one another's support and requesting that the father be allowed to have contact with his son. Relator also attached a supporting memorandum that quoted the applicable release statute, ORS 135.240(5), and argued that, based on that statute,

"the only conditions that the court may impose are those that are 'deemed necessary for the protection of the victim and the community.' The facts in this case do not support a no-contact condition between [relator] and his father because the condition does not protect the victim or the community."

The trial court denied the motion.

Relator filed the present petition for an alternative writ of mandamus, seeking to compel the trial court to modify the conditions in the pretrial release agreement as requested. As noted, the petition asserted that the trial court lacked the statutory authority under ORS 135.240(5) to include a "no contact with witnesses" condition in the release agreement and that, if the statute authorized such a condition, it was unconstitutional. Relator argued that only conditions "bearing on the safety of the public and the victim" were permissible and that the "no contact with witnesses" condition was unrelated to safety. This court issued the writ. The trial court declined to

5

modify its order, and the parties presented written and oral arguments before this court regarding the trial court's authority to impose the condition.

In his brief on the merits, relator again argued that the trial court had no statutory authority to impose the "no contact" condition as it related to relator's father, because that condition does not relate to the only permissible purpose for a condition of release under ORS 135.240(5)(b) -- "the protection of the victim and the community." Indeed, relator's primary argument was that "[t]he condition that [relator] refrain from having contact with his father, a potential state witness, is not a statutorily or constitutionally permissible condition of a security release." Relator asserted the legal position that a "no contact with witnesses" condition was not permitted unless required to protect the safety of a witness.

At oral argument, however, relator essentially abandoned that position. Relator's counsel stated that relator was "backing away from [the] argument" in the petition and brief that the only permissible conditions were those related to "safety." Relator conceded that, "if there were evidence of a real risk that a defendant might suborn perjury or tamper with evidence or intimidate a witness," then a "no contact" condition would be appropriate. Relator's counsel stated:

> "I think the statute does allow a court to impose a 'no contact with witnesses' condition if there is evidence and the court finds that that condition is deemed necessary to protect the public and the victim."

And relator stated that the trial court had "broad latitude" to impose appropriate conditions, based on the record before the court.

Instead of arguing that a "no contact with witnesses" condition was legally

6

impermissible under ORS 135.240(5)(b) and the Oregon Constitution, relator asserted at oral argument that the trial court had erred in this case, because there was "no evidence" in the record to support the conclusion that the "no contact" condition -- with witnesses generally or with father in particular -- was "necessary." Relator's argument thus focused on the documents before the trial court (the report prepared by the court's release assistance officer and defendant's father's affidavit), the statements by the prosecutor and defense counsel, and the inferences that could be drawn from the information before the trial court.

This court's exercise of its mandamus power is discretionary. *See* Or Const, Art VII (Amended), § 2 ("the supreme court may, in its own discretion, take original jurisdiction in mandamus"); *State ex rel Marbet v. Keisling*, 314 Or 235, 238, 838 P2d 585 (1992) (applying principle). We issued the alternative writ to consider the legal question that relator asserted in his petition and, later, in his brief: whether a "no contact with witnesses" condition is permissible under ORS 135.240(5)(b). Relator now has conceded that such a condition is permissible in some circumstances and has shifted his focus to whether the evidence in this record supports the trial court's imposition of the condition. Because that is not the legal question that was presented in the petition or briefed in this court, we exercise our discretion to dismiss the alternative writ.

The alternative writ is dismissed.